In re HARRALSON.

(Circuit Court of Appeals, Eighth Circuit. May 3, 1910.)

No. 101.

BANKRUPTCY (§ 258*)—SALE OF MORTGAGED PROPERTY—LIABILITY OF MORTGAGEE FOR COMMISSIONS.

A court of bankruptcy is not a court of general jurisdiction for the adjudication of controversies or the administration of assets in which the bankrupt's estate is in no wise interested, and if it undertakes to sell property which is subject to a mortgage, the validity of which is unquestioned, it is to be assumed that some benefit was expected to accrue to the general creditors, and if the proceeds are insufficient to pay the mortgage the holder is entitled to the full amount, without deduction for the commissions of the trustee and referee, where there is a general estate from which they may be paid.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 258.*]

Petition for Review of Order of the District Court of the United States for the Eastern District of Missouri.

In the matter of Joseph H. Huggins, bankrupt. On petition by George G. Harralson, trustee, for review of an order of the District Court. Affirmed.

The following is the opinion of Dyer, District Judge, in the court below:

This is a proceeding for review of an order made by the referee in bankruptcy, directing the Ozark Cooperage & Lumber Company to pay to the trustee of the bankrupt estate the sum of $1,500, being the amount bid by it for a sawmill and hoop machinery sold by the trustee pursuant to the order of the referee. It appears from the certificate of the referee that at the time of the adjudication of bankruptcy the Ozark Cooperage & Lumber Company had a valid chattel mortgage upon the sawmill and machinery of bankrupt, securing an indebtedness of $1,640. The Ozark Cooperage & Lumber Company proved its claim for the debt due it before the referee, and the chattel mortgage securing such claim was adjudged valid by the referee, and the claim allowed as a secured claim. It was stipulated between the trustee and the Ozark Company that the property covered by the chattel mortgage might be sold by the trustee under an appropriate order of the referee free and clear of the lien of the mortgage, and the lien transferred to and held upon the proceeds of such sale. Pursuant to such stipulation the referee made an order authorizing the trustee to sell the property described in the chattel mortgage at public or private sale, such sale to be subject to the approval of the referee, and to deposit the proceeds of sale in a designated depository. In accordance with the order of the referee, the trustee offered the property for sale, and it was bid in by the Ozark Cooperage & Lumber Company for the

sum of $1,500. The sale was duly approved by the referee, who entered an order directing that the property be delivered to the purchaser upon the payment of "sufficient funds to meet expenses of sale and commissions, namely, $85."

It appears that in the first instance the trustee only demanded that the Ozark Company, in carrying out its bid, pay him $70 for his commissions and $15 for commissions of the referee, making an aggregate of $85. (See report of trustee, Exhibit F.) Afterward the trustee insisted that the Ozark Company pay him in money $1,500, being the full amount of its bid for the property purchased. The Ozark Company declined to pay the purchase price of $1,500, or any other sum, in money, but insisted upon its right to fulfill its bid by entering a credit of $1,500 upon its secured claim of $1,640, which had been adjudged by the referee to be a valid first lien upon the proceeds of the property purchased. The referee thereupon made an order directing the Ozark Company to appear and show cause "why they persistently refuse to pay the purchase money for the property." The Ozark Company filed a return to the order to show cause, in which it set up that it had a first lien upon the proceeds of the property purchased by it, that it had informed the trustee of its willingness to have the amount of its bid credited upon the secured claim, and that it was advised by its counsel "that it is entitled to credit the full purchase price upon its said secured claim, and that it cannot be compelled to pay the purchase price in cash." The referee thereupon made an order directing the Ozark Company to pay the trustee the sum of $1,500, the amount of its bid, on or before May 25, 1909. Upon the petition of the Ozark Company, duly filed, this order has been certified to the court for review.

Under the facts here presented, I am of opinion that the referee's order was erroneous and should be set aside. The Ozark Company had a first lien upon the property bid in by it, and the validity of this lien was not only undisputed, but had been expressly adjudicated in the bankruptcy proceedings. There appears to have been other property out of the proceeds of which the costs and expenses of the bankruptcy proceeding could be met; but, whether this was the case or not, the secured creditor was entitled to the entire proceeds of the property upon which it had a lien until its debt was fully satisfied, and no part of such proceeds could properly be withheld from it to pay commissions of the trustee and referee or other costs of the bankruptcy administration. Smith v. Twp., 17 Am. Bankr. Rep. 745, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876; Matter of Anders Telephone Company (D. C.) 13 Am. Bankr. Rep. 643, 136 Fed. 995; Mills v. Virginia-Carolina Lumber Company, 20 Am. Bankr. Rep. 750, 164 Fed. 168, 90 C. C. A. 154, 21 L. R. A. (N. S.) 901. Furthermore, the Ozark Company was entitled to credit the amount of its bid in partial satisfaction of its secured claim, and the referee erred in making an order which deprived it of this right. In re Saxton Furnace Company (D. C.) 14 Am. Bankr. Rep. 483, 136 Fed. 697; In re Waterloo Organ Company (D. C.) 9 Am. Bankr. Rep. 427, 118 Fed. 904.

It may not be out of place to say that a referee in bankruptcy should not permit a trustee in bankruptcy to undertake the administration of property upon which there are incumbrances, the validity of which are not disputed, unless there appears to be some reasonable probability that there will be realized from the incumbered property some surplus for distribution to general creditors. Where no benefit can result to general creditors from the administration of incumbered property, it is usually the wiser course to permit lien creditors to enforce their liens by appropriate proceedings outside of the bankrupt court. In the present case the controversy is really over the right of the trustee and referee to commissions on the proceeds of the incumbered property, and this dispute would have been avoided if the mortgage creditor had been permitted to foreclose his mortgage in the ordinary manner outside of the bankruptcy court.

The order of the referee of May 17, 1909, will be vacated and set aside, and an order entered directing the trustee to deliver to the Ozark Cooperage Company the property purchased by it, upon its entering satisfaction of its secured claim and crediting the sum of $1,500 upon its claim heretofore allowed against the bankrupt estate.

Frank Kelly, for petitioner.

George B. Webster, for respondent.

Before HOOK and ADAMS, Circuit Judges, and McPHERSON, District Judge.

HOOK, Circuit Judge. The trustee in bankruptcy complains of an order of the District Court sustaining the right of a lien creditor, who purchased the incumbered property at trustee's sale, to have the purchase price credited on his allowed claim, instead of requiring him to make payment in cash, and denying the trustee and referee their commissions out of the proceeds.

Among the assets of the bankrupt was a sawmill which was subject to a. mortgage securing a note for $1,640. It was admitted the mortgage was valid and a first lien. The mortgage creditor's claim was accordingly allowed as a secured one. The trustee and the creditor joined in a petition to the referee that the property be sold free of the mortgage and that the lien be transferred to the proceeds. The petition was granted, and at the sale duly made by the trustee the creditor became the purchaser. The purchase price was $1,500, and the creditor asked that it be credited upon his allowed claim without deduction. The referee ordered him to pay the price in full to the trustee, or to pay their commissions on the sale, amounting to $85. The creditor declined to do either, and upon his petition for review he was sustained by the District Court. The trustee complains of the action of the court.

A court of bankruptcy should not assume charge of incumbered property and liquidate the liens on it,. unless there are reasonable grounds for believing some advantage will accrue to the bankrupt's estate. If the validity of the liens is unquestioned, and their amount is such that there is probably no excess of value in the property, it should be surrendered to the lienholders or others entitled, unless some other reason appears for retaining control. A court of bankruptcy is not a court of general jurisdiction for the adjudication of controversies or the administration of assets in which the bankrupt's estate is in no wise interested. If, however, cognizance is taken, it should be assumed . some ,benefit or advantage was expected to accrue to the general creditors, and if it results otherwise it is equitable to make the general estate bear the cost of the proceeding. Here the proceeds of sale did not equal the admitted incumbrance, and the deficiency should not be further increased by deducting the commissions of the officers, if there is a general estate against which they can be charged. This is in analogy to the general practice in equity in foreclosure cases, where, if possible, the judgment lien creditors are paid in full, and if a deficiency results from deducting the costs from the proceeds it goes as a judgment against the debtor. It appears here that there was a general estate of the bankrupt out of which the commissions might be paid. Therefore we need not determine what should be done in case of a sale by a trustee in bankruptcy at the instance or with the concurrence of a lien creditor, a deficit of proceeds, and no general estate.

The creditor was entitled to have the purchase price credited on his

allowed claim. It would have been a useless ceremony for him to pay the $1,500 into court and then have it repaid him after credit on his allowed claim.

The petition to revise is denied.