## Coke, et al. v. William H. Shanks, Auditor of Public Accounts, et al.

(Decided February 18, 1927.)

### Appeal from Franklin Circuit Court.

1. Appeal and Error—Allegations of Appellees' Verified Answers, Showing Case to be Moot, Must be Taken as True, in Absence of Reply (Civil Code of Practice, Sections 757, 758).—Where appellants did not reply to appellees' verified answers under Civil Code of Practice, sections 757, 758, showing that case was moot, but merely objected to motion to dismiss, allegations of answers must be taken as true.

2. Appeal and Error—Suit to Enjoin Payments of Certain Claims by State Treasurer is "Moot," Where Payments Were Made Pending Appeal.—Suit to enjoin payments of certain claims by state treasurer held moot, where payments were made pending appeal, and appeal will be dismissed, notwithstanding that questions are of public importance and concern acts of public officials, since case is "moot" where event occurs pending appeal, making decision unnecessary or placing matters in such shape that no actual relief can be afforded any one.

3. Pleading—General Prayer, Unsupported by Any Allegation in Bill, to Enjoin Highway Commission from Exceeding Income "for Any Biennial Period," Will Not Warrant Such Relief.—General

prayer to enjoin highway commission from exceeding income "for any biennial period" will not warrant granting of such relief, where not supported by any allegation of bill or by facts shown in record; suit being to enjoin payment of particular claims alleged to be in excess of income in particular year.

4. Appeal and Error—Suit to Enjoin Payments by State Treasurer is Moot, Where They Have Been Made, Though Constitutionality of Statute Validating them was Involved (Acts 1926, Chapter 358). —That constitutionality of Acts 1926, c. 358, purporting to validate claims and warrants in excess of income of highway commission, was involved in suit to enjoin payment of such claims, does not prevent case from being moot, where claims were paid pending appeal, since court will not consider purely academic questions of law.

SELDEN Y. TRIMBLE and BECKHAM, HAMILTON & BECKHAM for appellants.

FRANK E. DAUGHERTY, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, and L. A. FAUREST for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Dismissing appeal.

The appellants herein brought this action against the state highway commission, its members, the state auditor, and the state treasurer, seeking an injunction enjoining the highway commission from certifying various claims to the auditor; the auditor from issuing warrants. therefor, and the state treasurer from paying such warrants or stamping them "interest bearing," and from paying warrants theretofore issued or stamped "interest bearing," on such of those claims as had already ripened into such warrants. Their original petition alleged, in substance, that during the fiscal year beginning June 30, 1923, and ending June 30, 1924, the state highway commission had exceeded its income for that period by $3,-564,497.71, and to that extent its liabilities and contracts representing said alleged deficit were void; that the highway commission had carried this alleged deficit as a liability over into the fiscal period running from June 30, 1924, to June 30, 1925; that the highway commission had certified some, and would, unless enjoined, certify the rest of the various claims making up this alleged deficit to the auditor for payment; that he, unless enjoined, would issue his warrants therefor, and the state treasurer would, unless also enjoined, pay them or stamp them "interest bearing," and would pay such warrants as had

already been issued for such claims and so stamped. The petition closed with a prayer we shall presently mention. By an amended petition the appellants undertook to make their original petition more specific by itemizing all the receipts and expenditures of the highway commission during the period in which the alleged deficit was incurred, by outlining their theory concerning which or what part of the expenditures or claims therefor were invalid, and by increasing the alleged deficit to $3,735,-646.69. The prayer to this amended petition was similar to the one in the original petition, except that it asked that the individual·partnerships and corporations to whom claims were yet due, and whose claims were alleged to be void, be made parties to the suit. Second and third amended petitions were filed, but they added nothing to the issues of the original petition as first amended.

The prayer to the original petition asked, in substance, that the highway commission and its members be required to eliminate from the expenditures of the fiscal periods ending June 30, 1922, and June 30, 1923, all those incurred in excess of the income of the highway commission for those periods, and that the highway commission and its members be enjoined from certifying any part of such excess to the auditor for payment. The prayer also asked that the highway commission and its members be perpetually enjoined from "incurring any obligations in excess of the revenues accruing to the Commonwealth of Kentucky for the construction or maintenance of its state highway system *for any biennial period ending June 30th;*" (italics ours), although the petition as variously amended nowhere alleged any facts showing or even conclusions stating that the highway commission or its members had or, ever proposed to do any such thing except as alleged for the fiscal periods specifically mentioned. The prayer also asked that the auditor and treasurer be enjoined from issuing and paying any warrants for any of the claims certified to them by the highway commission and representing this alleged illegal deficit, and from issuing or paying any warrants representing any excess expenditures *for any biennial period.* (Italics ours.) The petition as amended is just as silent regarding the purpose of these two officers to do any such thing except for the period specifically alleged, as it is with regard to similar action on the part of the highway commission as we have above noted. The appellants

never asked for, nor did they ever obtain, any temporary injunction, enjoining *pendente lite* the appellees from doing the things which appellants asked be enjoined on final hearing. The appellees filed their answers, to which appellants filed replies. To these replies, the appellees filed their demurrers. On submission in chief, the trial court dismissed the appellants' petition as amended, and they have appealed, making as party appellees the state highway commission, the auditor, and the state treasurer.

While this appeal has been pending here, the appellants have sought no order of this court to preserve the *status quo* until their appeal could be decided. Pursuant to sections 757 and 758 of the Civil Code, the appellees have filed in this court their respective verified answers, in which they asked that this appeal be dismissed as now being a moot case. The sections of the Code referred to read:

Sec. 757:

"If it appear from the record that an appeal was improperly granted, or that the appellant's rights to prosecute it further has ceased, the appellee may, upon stating the grounds in writing, move the court to dismiss the appeal. The motion shall not be heard, without the appellant's consent, before the day on which the case is set for trial on the docket (except upon five days' notice served upon the appellant or upon his attorney of record.) (But when a party recovers judgment for only part of the demand or property he sues for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover)."

Sec. 758:

"If the facts mentioned in section 757 be not shown by the record, the appellee may plead them by a verified answer, to which the appellant may file a verified reply; and the questions of law or fact thereon shall be heard and determined by the court on or after the day on which the case is set for trial on the docket."

Although the appellants had the right under the Code to reply to these verified answers of the appellees, they did not do so, but have contented themselves with

simply objecting to the appellees' motion to dismiss this appeal. The allegations then of these verified answers filed in this court must in such a state of the record be taken as true. In brief, they are to the effect that, pending this litigation and, since this appeal was taken, all the claims whose ultimate payment it was the object of this suit to stop have been certified to the auditor, who has issued his warrants therefor, which warrants have all been paid by the state treasurer. It is obvious, in the light of such allegations, which, as stated, must be taken as true, that, in so far as the object of this suit was or is to enjoin the payment of these claims, it can no longer be obtained, and this case is moot. In Winslow v. Gayle, 172 Ky. 126, 188 S. W. 1059, we defined a moot case as one—

"Which seeks to get a judgment on a pretended controversy when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason can not have any practical legal effect upon a then existing controversy."

In the case of Logan County Fiscal Court v. Childress, 196 Ky. 1, 243 S. W. 1038, we said:

"Even if, pending an appeal, an event occurs which makes a decision unnecessary, or places matters in such shape that no actual relief can be afforded any one, the appeal will be dismissed as moot. The doctrine (is) that this court will not entertain an appeal when only an abstract question is to be decided, and from the determination of which no practical relief can follow, or when, during the pendency of an appeal, an event occurs which renders the decision unnecessary, the appeal will be dismissed."

And to the same effect is Auction Leaf Tobacco Warehouse v. Burley Tobacco Growers' Co-Operative Association, 213 Ky. 408, 281 S. W. 185. Since all the claims and the warrants therefor whose payment the appellees sought to enjoin have been paid, such payment is a *fait accompli,* and, even though appellants be correct in their contentions, there is nothing left to enjoin.

It is argued, however, that as the questions involved in this case are of public importance and concern the

acts of public officials, the case cannot become moot in this court because of changed conditions subsequent to the appeal, and the cases of U. S. v. Trans-Missouri Freight Association, 166 U. S. 290, 17 S. Ct. 540, 41 L. Ed. 1016; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 316; State v. Stutsman, 24 N. D. 68, 139 N. W. 83; Ann. Cas. 1914D 776, and State ex rel. Rylands v. Pinkerman, 63 Conn. 176, 28 A. 110, 22 L. R. A. 653, are cited to sustain that proposition. Considering these cases in their inverse order, we find in the Pinkerman case there was a controversy as to who was the chief of police of the city of Bridgeport. The office was held by the defendant, but in the lower court on a *quo warranto* proceeding judgment went in favor of the plaintiff. The defendant took an appeal from that judgment, and, because he took such appeal, he was dismissed from his office as chief of police by the board of police commissioners. Thereupon the plaintiff filed in the appellate court a motion to dismiss the appeal because the case was moot. The Supreme Court of Connecticut declined to dismiss the appeal because, as it said, the defendant had been forced out of office by a sentence of removal which was based upon the assumption of the validity of the judgment appealed from. Of course, if that judgment was invalid, then the removal of the defendant because he had appealed from such judgment would in turn be invalid. It is obvious, therefore, that the case was not moot. Until reversed, the judgment stood, and, as long as it stood, it furnished the basis for the position of the police commissioners in removing defendant because he had appealed from such judgment. It was necessary for the defendant to procure a reversal in order to attack the action of the police commissioners.

In the Stutsman case, the facts were that the Dakota Trust Company was surety on the bonds of various public warehouses in the state of North Dakota, executed to insure those who stored their grain with such warehousemen against loss by insolvency on the part of the warehousemen. One of the warehousemen for whom the Dakota Trust Company was surety became insolvent. The trust company undertook to settle with the claimants on the basis of 50 cents on the dollar, whereupon it was cited by the railroad commission of that state, which

claimed jurisdiction, to show cause why it did not pay
the claimants in full according to the tenor of the bond.
The trust company declined to acknowledge any jurisdic-
tion on the part of the railroad commission to decide such
issue. The latter thereupon issued a rule against the
trust company to show cause why it should not be re-
moved as surety on the bonds of other warehousemen be-
cause of its refusal to settle in full with the claimants of
the insolvent warehouseman. Thereupon the trust com-
pany sought a writ of prohibition to prohibit the rail-
road commission from removing it as surety on the bonds
of these other warehousemen. The lower court granted
the relief sought. Pending the appeal, all the bonds on
which the trust company was surety expired. By stipu-
lation of counsel, it was agreed that the trust company
had endeavored to renew all these bonds but the railroad
commission had refused to accept it or approve it as
surety because of its action as above mentioned in settling
the affairs of the insolvent warehouseman, and counsel
on both sides asked that the "writ of prohibition" suit
in the appellate court be treated as a request for a writ
of mandamus to compel the railroad commission to accept
or approve the trust company as surety on these renewal
bonds. The Supreme Court of North Dakota, however,
declined to treat the "writ of prohibition" suit as a writ
of mandamus, but did state that, inasmuch as the powers
of the railroad commission were involved in the suit, it
would proceed to adjudicate such issue, although the case
was moot. We gravely suspect that the North Dakota
court was moved to this conclusion because of the stipu-
lation of counsel to which it declined to give specific legal
effect. But how essentially unsound the North Dakota
case is may be ascertained from the order that the court
directed to be entered on its decision, which was that the
board of railroad commissioners should be prohibited
from ordering the trust company to appear before it and
show cause why the commission should not cancel the
bonds, but such order to contain no other provision or
prohibition. The court got itself into the position of de-
ciding that the railroad commission had committed error
without having the power to compel the railroad com-
mission to abide by such decision. And the court got
itself into this position of impotency because it under-
took to decide a case on which the issues were, as it con-
fessed, moot. We regard such action as essentially un-
sound. It is at direct variance with the position we took

in the case of Benton, County Clerk, et al. v. Clay, 192
Ky. 497, 233 S. W. 1041, which we shall presently discuss.

In the Southern Pacific Terminal case, an order of
the interstate commerce commission, prohibiting the
terminal company from giving certain undue preferences
and advantages to one shipper at the Port of Galveston,
Texas, over others *for a period of not less than two years
after Nov. 15, 1908,* was before the Supreme Court. The
specific period of two years had expired and a motion
was made to dismiss the case as moot, which the Supreme
Court declined to do. This action on the part of the
Supreme Court was obviously correct, as the order by its
own terms did not specifically end with the period of two
years. As stated by the court, the order of the commis-
sion "may to some extent . . . be the basis of further
proceedings," and hence it was entirely proper to con-
sider the validity of the order.

In the Trans-Missouri Freight Association case, the
question involved was as to the legality of a certain con-
tract or agreement entered into between certain railroads
in the Trans-Missouri region relative to freight rates.
Pending the appeal in the Supreme Court, the railroads
voluntarily withdrew from the contract and agreement
which was involved and to enjoin the carrying out of
which the suit had been instituted. A motion was then
made in the Supreme Court by the carriers to dismiss
the appeal as moot. The Supreme Court declined to do
so, on the ground *inter alia* that there was nothing to
prevent the railroads, on dismissal of this suit, from at
once entering into an agreement exactly similar to the
one whose validity was before the court for decision.
From the opinion of the court we find that the railroads,
in making their motion to dismiss the appeal as moot,
insisted that the contract referred to was perfectly valid,
and the court gathered from the way the motion was
framed that the railroads did not deny any purpose to
enter into a similar one in the immediate future. The
prayer of the bill was to enjoin the railroads from con-
tinuing in a like combination, and it is perfectly plain
that the court construed the record to show that the rail-
roads, unless so enjoined as requested, were threatening
or would probably enter into an agreement like the one
the question of the validity of which was before the court.
In such a state of record the court declared the case not
to be moot, buttressing its position with some statements

about the public being interested in the decision of the question involved. But we doubt if the court would have undertaken to decide the case otherwise moot solely because of this reason, and only decided the Trans-Missouri case because of the condition of the record which indicated a purpose of the carriers probably to enter into another contract like the one in question. From this last viewpoint, the question and case were not moot.

But we have no such situation before us. The claims and warrants whose validity is attacked are all paid. There is nothing in the petition as amended or in the record to indicate that the appellees have done or propose to do any of the things of which appellants complain with reference to certain named fiscal periods except for such named periods. If such action for the named periods be wrong, as appellants contend, there is certainly no presumption or assumption that public officials will continue to do wrong. It is true appellants' prayer to their petition asks that the appellees be enjoined from exceeding their income "for any biennial period" but, as stated, there is no allegation in the petition to warrant granting such relief. In Newman on Pleading and Practice, both the second and third editions, in section 352, the author says:

"But, comprehensive as is the general prayer, it has its limits. No relief will be given outside the allegations of the petition."

In Crow v. Owensboro & Nashville R. Co., 82 Ky. 134, it was insisted that, under a prayer for general relief, complete rescission of a contract should be granted, although the facts set up in the petition stated the cause only for partial rescission. Denying that contention this court, after pointing out that section 90 of our present Civil Code was simply an affirmation of what the practice was prior to the adoption of the Code, said:

"Under that practice it was required that in order to have relief under a general prayer *the relief must be consistent* with that specifically prayed, as well as *with the case made by the bill.*" (Italics ours.)

The prayer, then, being unsupported by an allegation in the bill or by any facts shown in this record, will not warrant the granting of the relief sought.

Nor does the fact that the constitutionality of chapter 358 of the Acts of 1926, which purports to validate the claims and warrants here in question, was involved in the decision of this case in the lower court, save this case from being moot or bring it within the scope of the rule of the cases cited and relied upon by the appellants as they contend that rule to be. This act, by its very terms, applies only to the claims and warrants here involved. They have been paid, valid or invalid, validated constitutionally or not. The constitutionality of this act cannot possibly affect any further acts on the part of the present appellees, and so its decision is neither necessary nor proper as a guide to them. The case on this aspect presents a purely academic question of law so far as the parties to this appeal are concerned. This court has ever steadily declined to answer such questions.

In the case of Benton, County Clerk, et al. v. Clay, 192 Ky. 497, 233 S. W. 1041, the appellee, Clay, brought a suit to enjoin the county clerk from placing on the primary ballot the name of George M. Royster as a candidate for councilman. The case turned on the validity of an election held the previous fall by which the commission form of government for the city of Henderson had been adopted by the voters. The lower court upheld the validity of that election. When the case reached this court, the August primary had passed, and hence the question as to whether Royster should be kept off that ballot was moot. It was insisted, however, that this court should pass on the validity of the election adopting the commission form of government for Henderson. Answering that contention we said:

"It is unfortunate that the condition of the record is such as prevents us from adjudicating the single question raised against the validity of that election; but it is a firmly settled rule in this and all other courts that it will not assume jurisdiction to determine abstract or moot questions and thereby consume and appropriate its time in academic discussion, since courts are created for the purpose of trying cases rather than questions. . . . There is now no existing controversy between any of the parties to this action, although it is quite probable that as members of the public in the city of Henderson they are indirectly interested in having the question of the validity of the 1920 election settled, but

all citizens of the state or of any municipality therein might be said to have the same indirect interest in the settlement of all public questions affecting the territory involved.''

The Benton case is conclusive of this contention of the appellees.

Since, as we have seen, this case is moot within our rule declining to decide such cases, the motion of the appellees to dismiss this appeal must be sustained, and it is so ordered.

Whole court sitting and concurring.