## In re WESLEY CORPORATION.
### No. 3081.

District Court, E. D. Kentucky.
Feb. 6, 1937.

Combs & Combs, of Prestonsburg, Ky., for trustee.

W. W. Barrett, of Pikeville, Ky., for W. K. Elliott.

Jean L. Auxier, of Pikeville, Ky., for Kimball-Pocahontas Coal Co.

J. J. Moore and Henry J. Scott, both of Pikeville, Ky., for Big Sandy Co.

FORD, District Judge.

The questions presented are raised by petitions for review of rulings of the referee, filed by K. J. Day the trustee, W. K. Elliott a creditor, and the Kimball-Pocahontas Coal Company an intervening petitioner, and by a motion of the intervening petitioner for leave to amend.

The Wesley Corporation was adjudged a bankrupt upon an involuntary petition filed on July 26, 1934. For a number of years the bankrupt had been engaged in a coal mining enterprise in Pike county, Ky., operating under leases from the Big Sandy Company, W. K. Elliott, and others. It owned considerable mining equipment and other personal property, some of which was located on each of the leaseholds. It also owned the surface of two tracts of land in Pike county, one containing about 130 acres and the other approximately 32 acres.

At the time of the filing of the petition, the bankrupt was indebted to the Big Sandy Company and to W. K. Elliott for past-due royalties. They filed claims asserting liens upon the property of the bankrupt located upon the respective leaseholds. Late in the proceedings it developed that certain parts of the mining equipment were mortgaged for a balance due on the purchase price to the Kimball-Pocahontas Coal Company, a West Virginia corporation, which was not scheduled as a creditor and received no notice and had no knowledge of the bankruptcy proceeding until after all property had been sold.

Upon the orders of the referee, the trustee sold all real and personal property of the bankrupt, free of liens, with the provision, "that all existing valid liens be

and they are hereby transferred to the proceeds of sale." The order of sale contained the further provision that "the trustee will first sell the personal property and real property separately and in proper units, and then as a whole, accepting the highest and best bid or bids."

The trustee's report of sale shows that he first offered the personal property located upon the different leaseholds as separate units and then offered separately the bankrupt's interest in the two tracts of real estate. Bids for the property when offered in that manner were as follows:

| | |
|---|---:|
| Steel rail and copper wire on Big Sandy Company leasehold | $ 101.00 |
| Mine fan, electric pump, rail and copper wire on Ratliff heirs leasehold | 35.00 |
| Mining equipment and machinery located on other portions of mining premises | 1,025.00 |
| Surface of 135 acre tract of land | 2,900.00 |
| Surface of 32.67 acres of land | 87.00 |
| Total | $4,239.00 |

The trustee then offered all real and personal property in one unit or as a whole, for which he received a bid of $9,400, which was accepted. On May 25, 1936, the referee entered an order adjudging all liens to be entitled to payment from the gross proceeds without apportionment on the basis of the value of the property to which separate liens applied.

Both the trustee and W. K. Elliott challenge the correctness of the order in this respect upon the ground that all liens did not stand on the same basis, and all of them did not cover the whole of the property.

That a lien on less than all of several parcels of property, sold under order of court in one lot, may be transferred to the gross proceeds only to the extent of such proportion thereof as the particular property covered by the lien contributed to the whole fund, seems too clear to admit of substantial doubt. The authority of the court to sell the property of the bankrupt as a whole and free from liens does not authorize displacement of the pre-existing relative status of the various lienholders, either as between themselves or as between them and general creditors.

In the case of In re Great Western Manufacturing Company, 152 F. 123, 126, 128 (C.C.A.8), certain property of the bankrupt, which was subject to a lien arising from a reservation of title in a conditional sale contract, was sold in one lot along with other property of the bankrupt. The lien creditor asserted the right to be paid in full out of the gross proceeds. The court said: "Its acquiescence in the sale of its property * * * with that of the bankrupt estopped it from receiving out of the proceeds of the sale of the entire lot any larger proportion than the value of its property bore to the value of the entire property sold." And further the court said: "the limit of the vendor's preferential right was to receive the proportion of the proceeds of the sale justly attributable to the machinery and the material the ownership of which it retained." Other cases in point are: George Carroll & Bro. Co. v. Young, 119 F. 576 (C.C.A.3); In re Union Trust Company, 122 F. 937 (C.C.A. 1); In re Shoe & Leather Reporter et al., Petition, 129 F. 588 (C.C.A.1); Leslie v. Knight Soda Fountain Company, 55 F.(2d) 224 (C.C.A.2); In re Benz (C.C.A.) 218 F. 50.

The same cases hold that where the record shows that before the sale as a whole the property was offered for sale separately, the relation of the separate bids to the total of all bids so received is usually regarded as a satisfactory basis for the apportionment in fixing the relative rights of the parties to share in gross proceeds derived from the later sale as a whole. However, if for any reason that basis be found inequitable or inadequate, the referee may consider the appraisement and any other competent evidence offered on the subject. Frederick v. Meyran (C.C.A.) 278 F. 503; In re Whiteman Company (D.C.) 26 F.(2d) 121.

In the case of In re States Printing Company, 241 F. 245, 246 (C.C.A.7), it is said: "Furthermore, even if a mortgagee knows nothing of the bankruptcy, the sale, or the order, his recovery would be limited to the actual value of the property sold."

As illustrative of the inequities which would follow the observance of the method of distribution here adopted, it may be pointed out that, upon the offering of the property in separate units, the total bids for the interest of the bankrupt in the two parcels of real estate amounted to $2,987 or approximately 70 per cent. of $4,239, the total of all separate bids. If apportioned upon this basis, the real estate would be

considered as having contributed about 70 per cent. of the total proceeds derived from the sale in gross. The Big Sandy Company and the Pocahontas Coal Company asserted no claims whatever to liens on real estate, yet the order makes it possible for their liens to be paid in full out of the gross proceeds regardless of the value of the property covered by them. It further appears that the property in lien to W. K. Elliott, by the terms of the contract creating his lien, is limited to "all of the property of second party (the bankrupt) at the Yates Valley mine." Whether this lien embraces the overlying surface real estate owned by the bankrupt, as well as whether it extends to chattels located on the Big Sandy property or other leaseholds, are questions which seem not to have been considered in transferring the lien to the proceeds.

Any surplus remaining from the proceeds of separate parcels or units, whether real or personal, after the satisfaction of the liens properly applicable thereto, would be available for general creditors. In the absence of a determination of the amount of the proceeds fairly attributable to the various units or parcels and the liens to which they are subject, it would seem impossible to ascertain whether any such surplus exists or the amount of it.

■ The referee erred in failing to determine the identical property subject to the various liens, and in failing to allot the proceeds in proportion to the amounts fairly attributable to the property subject to the separate liens, respectively. The referee's order must be set aside in so far as it adjudged all liens to be against the whole proceeds. Upon the remand of the case, the referee will determine the particular property to which each lien attached and apportion the proceeds accordingly.

On October 15, 1934, the trustee disclaimed all rights under a mining lease of date July 1, 1930, executed by W. K. Elliott, and surrendered the premises. The lessor Elliott filed two claims which are referred to in the record as claims No. 21 and No. 22.

Claim No. 21 is for the sum of $4,568.69, of which $4,168.69 is the amount of a judgment rendered by the Pike circuit court against the bankrupt for royalties accrued under Elliott's lease to and including June 1934. The remaining $400 of this claim is for the minimum royalties of $100 per month for the months of July, August, September, and October, 1934, the period between the filing of the petition and the surrender of the lease.

By claim No. 22, the lessor seeks to recover $15,000 damages on account of the cancellation of his lease.

The judgment of the Pike circuit court embraced in claim No. 21 was rendered within four months next prior to the adjudication. The referee treated the entire judgment as void under section 67f of the Bankruptcy Act as amended June 7, 1934, 11 U.S.C.A. § 107(f), and disregarded it in fixing the amount of indebtedness due Elliott. He held, however, that Elliott had a valid pre-existing contract lien for the royalties accrued to the date of the filing of the petition. Being of the opinion that the right of this lessor to a lien upon the property of the lessee, even though resting upon contract, was limited by the provisions of sections 2316, 2317 of the Kentucky Statutes, the referee allowed as a secured claim only that portion of the accrued royalties which had fallen due within four months next preceding the filing of the petition. The remainder was allowed as a common claim but was reduced to the extent of $476.72 on account of certain credits to which the referee considered the debt to be subject. That portion of claim No. 21 which covered minimum royalties from the date of the filing of the petition to the date of the surrender of the property was disallowed. The entire claim for damages (No. 22) was likewise disallowed. These rulings of the referee are certified for review.

While the judgment determined the amount of the debt then due, it is conceded that the effect of it was not to create a lien, but merely to enforce a pre-existing lien. Notwithstanding the use of the word "judgment" in the first clause of section 67f (11 U.S.C.A. § 107(f), the Supreme Court, in the case of Metcalf Bros. v. Barker, 187 U.S. 165, 174, 23 S.Ct. 67, 71, 47 L.Ed. 122, said: "In our opinion the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated. * * * A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute." The court also said: "By § 63a [11 U.S.C.A. § 103(a)], fixed liabilities evidenced by judgments absolutely owing at the time of the filing of the petition, or founded upon provable debts reduced to judgments after the filing of the petition

and before the consideration of application for discharge, may be proved and allowed."

■■ Even though rendered within four months before bankruptcy, in the absence of attack by the trustee or a creditor on the ground of fraud or collusion, it appears that judgments of state courts, having jurisdiction of the parties and the subject-matter, are entitled to full faith and credit in national courts of bankruptcy and are res adjudicata in so far as they determine the amount and validity of debts. A resulting lien or preference and not the judgment debt is the thing that is nullified by the bankruptcy statute. Remington on Bankruptcy, § 951; Gilberts Collier on Bankruptcy (4th Ed.) § 1416, p. 1132, and § 1247, p. 968.

■ I am also unable to agree with the referee's holding that a contract lien is limited by the provisions of the Kentucky Statutes relating to statutory liens of landlords.

The question was considered by the Kentucky Court of Appeals in the case of National Bank of Kentucky v. Kentucky River Coal Corporation, 230 Ky. 683, 686, 20 S.W.(2d) .724, 726, in which the court said: "It is also earnestly insisted that under the statute the lessor only has a lien for one year's rent and has no lien for any rent that has been due more than 120 days. But the statutory lien (Ky.St. §§ 2316, 2317) in no wise prevents the parties from contracting for a further lien, and in this case the lease by apt terms does give a lien for all royalties due until paid. The statutory lien does not affect the contract lien; the latter may be enforced though the statutory lien under the facts does not exist."

■ The ruling of the state court is controlling upon this court in the construction and application of a state statute.

So much of the referee's order as disregarded the judgment of the state court fixing the amount of the debt, and in so far as it limited Elliott's lien claim for royalties which accrued prior to bankruptcy to only such portion thereof as became due within 120 days next before the filing of the petition must be disapproved and set aside.

■ As to the claims for royalties which accrued subsequent to the filing of the petition and for damages sustained as the result of the cancellation of the lease, such claims are clearly provable as common claims, under the Act of Congress of June 7, 1934, amending section 63 of the Bankruptcy Act, 48 Stat. 923, 11 U.S.C.A. § 103.

In the cases of City Bank Farmers Trust Company v. Irving Trust Company, Trustee, 57 S.Ct. 292, 296, 81 L.Ed. ——, and Kuehner et al., Trustees, v. Irving Trust Company, Trustee, et al., 57 S.Ct. 298, 81 L.Ed. ——, both of which were decided by the Supreme Court on January 4, 1937, may be found interesting discussions of the legislative history and purpose of this amendment as well as a similar amendment to section 77B (11 U.S.C.A. § 207). In the City Bank Farmers Trust Company Case, supra, the court said: "Under the old law the rejection of a lease by a trustee in bankruptcy was not a breach of the lease, in the absence of a specific agreement that it should be so. The bankrupt tenant remained liable for the rent as it fell due but all the assets wherewith he might pay were taken from him. For a default in payment subsequent to adjudication the landlord might reenter and terminate the lease. By virtue of a covenant so providing the landlord might treat the bankruptcy as cause for reentry and termination of the leasehold estate. While, therefore, the rejection of a lease by a trustee in bankruptcy might, and usually did, spell possible or probable injury to the landlord, that fact gave him no standing as a creditor in the bankruptcy proceeding. Having in mind this state of affairs the purpose is clearly to give a landlord a provable claim for injury due to the rejection of his lease, whether the instrument contains a covenant of indemnity or not." The court said further: "The provision, however, creates no new claim. It merely treats the adjudication as a breach of covenant and gives a provable claim in virtue of the breach." In the same case, referring to the measure of damages for the breach of the landlord's contract, the court said: "The amount of the landlord's claim for the loss of his lease necessarily is the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth. This, we have said, is a method of liquidation familiar and fair."

However, in the Kuehner Case, supra, the court holds that the amount recoverable upon such claims is limited by the provi-

sions of the amendment. The limitation provided in the amendment to section 63 (11 U.S.C.A. § 103) is that in no event shall it exceed, "the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises plus an amount equal to the unpaid rent accrued up to said date."

We have been discussing thus far only the provability of such claims. The allowability of such claims is an entirely different question. A claim may be wholly false and improper in fact and yet it will be provable on its face if it comes within the classes mentioned in section 63 of the Bankruptcy Act. Whether a claim is allowable, although provable on its face, is a question for judicial determination upon the facts of the case. Remington on Bankruptcy, §§ 759–761, 904. The trustee filed objections to this claim. The burden rested upon Elliott to prove his damages. Forbush Co. v. Bartley (C.C.A.) 78 F.(2d) 805. The carefully prepared opinion of the referee sets out in adequate detail the various leases, upon the continuance of which Elliott's right to future royalties depended. Each of them provides, in substance, that they are to remain in force only until all the workable and merchantable coal be mined from the property. The contention was made before the referee that the contract lacked consideration in its incipiency and, in that connection, considerable evidence appears in the record relative to the workable and merchantable coal which was unmined on July 1, 1930, the date of the contract. But as to the conditions existing at the time of the filing of this bankruptcy petition, about four years later, substantial proof seems lacking. None is pointed out by the complaining creditor and none appears in the summary certified by the referee. Proof as to the extent of the workable and merchantable coal in the mines on July 26, 1934, was obviously necessary in order to determine the length of time Elliott's lease would have thereafter continued in effect. Without definitely showing the extent of the remainder of the term, the future rental value of it could not be ascertained, and hence no basis for measurement of damages was afforded. Moreover, a finding of fact by the referee should not be disturbed unless clearly erroneous. Manufacturers Acceptance Corporation v. Hale, 65 F.(2d) 76 (C.C.A.6). It is not shown that the find-ing of the referee in this respect was clearly erroneous. This action of the referee will not be disturbed.

Although the execution lien allowed in favor of the Kentucky Wholesale Company against the gross proceeds was adjudged inferior to the lien of W. K. Elliott and other secured creditors, the petition filed by Elliott questions the correctness of the order of the referee in allowing this lien at all. The contention is that the claim is not allowable (1) because K. J. Day, trustee in the case, is manager and chief stockholder of the corporation asserting the claim, and (2) because no lis pendens notice was entered of record as provided by sections 2358a-1, 2358a-2, Kentucky Statutes.

I am unable to find any authority holding that a person, who, upon his election by the creditors, accepts the position of trustee, by so doing forfeits his right to assert a just claim against the estate. No authority for such contention is cited by the complaining creditor.

The statutory provisions, above referred to, relating to lis pendens notices, do not have the effect of invalidating execution liens. They merely provide that such liens, of which no notice is recorded in the manner provided by the statute, shall be ineffective as against the rights of subsequent purchasers, lessees, or incumbrancers of real estate, for value, whose subsequent interest was acquired without notice of such pre-existing liens.

In so far as the referee adjudged the execution lien of the Kentucky Wholesale Company to be allowable, the order is approved.

After all the property which came to the hands of the trustee had been sold and the sale confirmed, an intervening petition was filed on behalf of the Kimball-Pocahontas Coal Company, by which it was alleged that an electric motor generator, a Jeffrey locomotive and a Goodman bottom cutting machine, all of which had been sold by the trustee, were subject to a chattel mortgage of record, by the terms of which the intervening petitioner was entitled to the possession thereof by reason of default in the payment of a balance of $3,000 due on the purchase price. The debt of this intervening petitioner was not scheduled among the obligations of the bankrupt and it had no notice of the bankruptcy or of the

sale. The allegations of this intervening petition are entirely directed to the establishment of the right of the petitioner to take possession of the property in kind, and such was the specific prayer of the petition, although it contained a prayer for general relief.

In the case of In re Muhlhauser, 121 F. 669 (C.C.A.6), the right of a stranger to the bankruptcy proceedings to maintain such an action in the court of bankruptcy was denied, notwithstanding a prayer for general relief. After pointing out that such rights to the possession of specific property held by persons not before the court were not divested by the trustee's sale and that such rights as they may have remain to them and can be asserted against the property after the sale as effectually as before, the court held it to be quite clear that it was not within the province of the bankrupt court to follow property after it had been released and passed into the hands of purchasers who bought it subject to the rule of caveat emptor, in order to settle equities which may be claimed in the specific property by strangers to the proceedings.

It follows that the petition for review filed by the Kimball-Pocahontas Coal Company claiming that the referee erred in failing to award to it the right to the possession of the property is without merit.

The intervening petitioner manifested no disposition to affirm the action of the court in ordering the sale, to transfer its claim to the proceeds or to relinquish its alleged right to the possession of the property. Nevertheless, in place of the relief asked for, the referee adjudged the lien valid and awarded the claimant the right to share in the gross proceeds along with other secured creditors.

It seems clear that inability to afford the relief sought did not warrant gratuitously granting an altogether different and uncalled-for relief as a substitute. Being without jurisdiction to entertain the proceedings for the relief sought, in the absence of some affirmative action on the part of the petitioner calling for available relief, the power of the court extended no further than to dismiss the intervening petition, leaving unimpaired any right the petitioner may have had to otherwise pursue his remedies.

In the case of Coke v. Shanks, Auditor, 218 Ky. 402, 291 S.W. 362, it is pointed out that, under a prayer for general relief, no relief will be given outside the allegations of the petition, and in order to have relief under a general prayer, the relief must be consistent with that specifically prayed.

Without expressing any opinion as to the merits of the claim of the Kimball-Pocahontas Coal Company or the validity of its mortgage, in view of the record as it stood when the order was made, I feel impelled to set aside so much of the order of the referee as purports to pass on those questions.

However, since the case was submitted to the court upon the several petitions for review, the Kimball-Pocahontas Coal Company has tendered and moved for leave to file an amended intervening petition entirely abandoning its claim to the possession of the property and asking that its rights be transferred to the fund realized from the sale of the mortgaged property.

The relief sought by the amendment is significantly different from that claimed in the original intervening petition, and likewise different, in its nature, from that sought by the proceedings disapproved in the case of In re Muhlhauser, supra.

Ordinarily, such belated action would be inadmissible. Under the circumstances of this case, it appears that the ends of justice will be served by permitting the amendment to be filed. The question as to the validity of the mortgage and any others which may be raised as to the merits of the claim will then be open for determination.

"It is not necessary for a secured creditor in such cases to make proof in the form prescribed by the Supreme Court for proof of secured claims; he may simply file an intervening petition setting up his lien, as in other cases." Remington on Bankruptcy, § 2599.

In Ray v. Norseworthy, 23 Wall. (90 U.S.) 128, 136, 23 L.Ed. 116, the Supreme Court said: "* * * the mortgagee may, if he sees fit, affirm the sale and proceed to enforce his priority against the proceeds of the sale."

The amendment further alleges, in substance, that the trustee was the real purchaser of the property; that the ostensible purchaser was in fact acting as agent for the trustee who took possession of the

property and resold it for a substantial profit.

By long-established principles of equity jurisprudence, nothing is more clearly established than that a trustee may not become the purchaser of the trust estate either directly or through agents or other persons acting in his behalf. Both creditors and bankrupt alike have the right to expect that the trustee will not use his official position to speculate for his personal profit in the property entrusted to his care. The duty to enforce these principles rests no greater upon any courts than upon the federal courts of bankruptcy. The prime object of Congress in enacting the bankruptcy laws was to secure for creditors as well as bankrupts the efficient and fair administration of estates. In re Frazin & Oppenheim (C.C.A.) 181 F. 307; In re Allen B. Wrisley Company (C.C.A.) 133 F. 388; In re Hawley (D.C.) 117 F. 364; Remington on Bankruptcy, § 2560. It is not important whether the price paid at the sale was adequate in a particular instance. The rule rests upon vital considerations of public policy and is applicable in every case. If the facts alleged in this amendment be true, the duty of the court to require the trustee to account for all proceeds derived from the property, including any profits from its resale, is clear and imperative.

Upon the return of the case to the referee, he will permit the amended intervening petition to be filed with him, and will hear and determine on their merits, all issues presented.

A brief is filed on behalf of the Big Sandy Company earnestly insisting that the order of the referee is erroneous in respect to the amount of its secured claim. The record certified by the referee contains no petition for review filed by or on behalf of the Big Sandy Company. The method provided by General Order 27 (11 U.S.C.A. following section 53) is exclusive, and the District Court is without authority to review an order of the referee by any other mode of procedure. In re Pearlman, 16 F. (2d) 20 (C.C.A.2); In re Wilkes Barre Yellow Cab Co. (D.C.) 53 F.(2d) 1024; In re Finkelstein (D.C.) 3 F.(2d) 1006; In re Ainsworth (D.C.) 5 F.Supp. 523.

An order will be entered setting aside the order of the referee of May 25, 1936, to the extent herein indicated, and remanding this case to the referee for further proceedings consistent herewith.