In re **PORT CITY CONSTRUCTION CO.,
INC.,** and **Oak Park Heating & Air
Conditioning Co., Inc., Bankrupts.**

**FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF PINE BLUFF,**
Appellant,

v.

**W. M. DICKINSON, Trustee in
Bankruptcy,** Appellee.

**Nos. PB 74–25–B and PB 74–26–B.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Jan. 17, 1975.

Coleman, Gantt, Ramsay & Cox, Pine
Bluff, Ark., for appellant.

William W. Benton, Pine Bluff, Ark.,
for appellee.

## MEMORANDUM OPINION
## AND ORDER

OREN HARRIS, District Judge.

This is an appeal pursuant to Rule 801,
Bankruptcy Rules, from an Order of the
Bankruptcy Judge entered on July 31,
1974, in each of the captioned cases. The
proceedings below with respect to the
matters involved in this appeal were
treated by the Bankruptcy Judge as con-
solidated, and are so inter-related that

they are consolidated for purposes of this appeal.

Oak Park Heating & Air Conditioning Co., Inc., and Port City Construction Co., Inc., each owned separate, but adjacent, parcels of real property located in Jefferson County, Arkansas. One building was constructed, a part of which single building was on the Oak Park realty and the other part on the Port City realty. The building was divided by a wall along the property line between the two parcels of realty.

Appellant, First Federal Savings and Loan Association of Pine Bluff, was the holder of a note secured by a first mortgage lien on the Oak Park realty, with an unpaid balance due thereon at the time of the Order of the Bankruptcy Judge in the amount of $21,933.59. Appellant also held a note secured by a first mortgage lien on the Port City realty, with an unpaid balance of $25,065.55 at the time of the Order.

Each of the bankrupt corporations filed a separate action in bankruptcy. Each has different general creditors. The Bankruptcy Judge found that, as a practical matter, the building and two parcels of real estate, under separate ownership, were inseparable. He, therefore, after determining on the basis of an appraisal report that the realty probably had an equity over and above the amount of First Federal's liens, ordered that the two parcels, including the building, be offered for sale free of liens, at the same sale.

The Order of sale required the two parcels to be offered for separate bids, and then as a single parcel. Should the single bid for the combined parcels exceed the bids for the separate parcels, then the amount received from the sale of the combined parcels was to be apportioned to the respective estates on the basis of the bids received for the separate parcels. First Federal consented in writing to the sale free of liens.

After advertisement, at a well-attended sale, the two parcels were offered separately, but no bids were received. The two parcels were then offered as a single, combined, unit and one bid was received, from First Federal in the amount of $50,000.00.

Since there had been no bids for the individual parcels, the proper allocation of the $50,000.00 to the respective estates of the two bankrupt corporations became a problem. First Federal desired to allocate the sale proceeds on the basis of the unpaid balance of their two liens. The Trustee in Bankruptcy proposed that the fund be allocated on the basis of the appraisal report on the two parcels.

The Bankruptcy Judge, after a hearing, filed a Memorandum in which he found that to allow First Federal to allocate its bid price on the basis of the unpaid balance of the liens would ignore the rights of the unsecured creditors of the bankrupts to the equity over the amount of the respective liens. He also considered that the amount of the unpaid balance on the notes had no reasonable relation to the value of the respective parcels, although recognizing that under the Order of Sale First Federal might have achieved exactly the result urged by simply entering a bid in the amount of their lien as to each separate parcel.

The appraisal report, which was secured by the Trustee in Bankruptcy in advance of the sale, estimated the value of the Oak Park parcel at $39,000.00 and the value of the Port City parcel at $28,000.00. On the basis of that appraisal report, the Bankruptcy Judge determined that the proceeds of sale of the realty should be allocated 58.2% to Oak Park and 41.8% to Port City. Orders were entered accordingly in the two respective proceedings, allocating $20,-900.00 to Port City and the balance of $29,100 to Oak Park. First Federal objected to such determination and properly preserved this issue on appeal.

Rule 810, Bankruptcy Rules, requires that the Court accept the findings of fact of the Bankruptcy Judge, unless they are clearly erroneous. The cases also set the same standards for a review of the Bankruptcy Judge's findings on appeal to the District Court, Gross v. Fidelity &

Deposit Co. of Md., 302 F.2d 338 (8th Cir. 1962).

Although no case precisely in point was cited, involving a bulk sale of the separate property of two estates, a similar issue has been decided in cases wherein separate items of property of a bankrupt, subject to separate liens, have been sold in bulk and the proceeds of the bulk sale must be allocated. In Matter of Wesley Corporation, 18 F.Supp. 347 (D.C.Ky.1937), quoted with approval as a part of the text in Collier on Bankruptcy, 14th Ed., 1971, Vol. 4A, ¶ 70.99, p. 1223, the Court held that the usual method for apportionment is the relation of the bids on the separate items to the bulk bid but, if that basis be found inequitable or inadequate, the referee may consider the appraisement and any other competent evidence offered on the subject. Many other cases are to the same effect and appellant has not pointed out any authority to the contrary.

The Court, therefore, is constrained to find that the findings of fact and Orders of the Bankruptcy Judge, determining the amount of the proceeds of the bulk sale of the two parcels of realty to be apportioned to the respective bankrupt estates, are not clearly erroneous, that his Orders are within the scope of his sound discretion and are not contrary to law. The findings of fact and the Orders of the Bankruptcy Judge, insofar as the determination of the amount of the proceeds of the sale to be allocated to each bankrupt estate herein, should be affirmed.

The second assignment of error raises a question as to the propriety of the Orders in the respective cases deducting 10% of the amount allowed as to the respective lien claims of First Federal as "cost of administration of the sale". When the sale proceeds are allocated in accordance with the findings of the Bankruptcy Judge, the proceeds are sufficient to pay the lien of First Federal on Oak Park realty, leaving a balance of $7,166.61. On the Port City realty, the allocated proceeds of sale are $4,165.55 less than the amount of First Federal's lien.

Two distinct fact situations are presented. In the Oak Park proceedings, the sale resulted in a surplus over the amount of the lien, the balance over the lien amount being ample to pay the costs of administration. In the Port City proceedings, however, the proceeds of sale were grossly insufficient even to pay the lien. The two factual situations have been considered by many courts, with differing results.

Collier on Bankruptcy, supra, ¶ 70.99 [6], pp. 1223–1243, and 48 A.L.R.2d 1343–1369 have each exhaustively annotated and analyzed the decisions on the questions involved. Collier states, Vol. 4A, pp. 1224, that:

"Where the bankrupt's property is sold free of liens and encumbrances, one of the chief problems is the allocation of expenses, both of the sale itself and of the administration of the property, between the lienholders and the estate. The solution of this problem lies in the compromise of two great principles: (1) '. . . the cost of protecting a fund in court is everywhere recognized as a dominant charge on that fund'; (2) administrative expenses in bankruptcy should be borne by the estate—the general creditors—and the lienholder is entitled to the full value of his security, if possible, unimpaired by the bankruptcy liquidation.

\* \* \* \* \* \*

Unfortunately, hardly any phase of the bankruptcy law has been plagued with so many inconsistent generalities, irreconcilable rules and principles, disagreements between circuits and even within circuits (apparently without any awareness thereof) and loose, indiscriminate statement of rules and citation of authority." p. 1225.

From a review of the decisions, this Court agrees with the statement of Collier. However, there does not appear to be a disagreement within the Eighth Circuit. In view of the disagreements between circuits and the continued refusal of the United States Supreme Court to accept certiorari on the differing

views, this Court is constrained to follow the decisions within this circuit.

In Rubenstein v. Nourse, 70 F.2d 482 (8th Cir. 1934), the Court stated:

"It appears that the mortgaged property was sold for more than sufficient to pay in full all liens, leaving a surplus remaining in the general estate of the bankrupt. Notwithstanding this, however, the referee deducted from the amount of appellant's claim the sum of $2,601.70, on the theory that this amount was deductible as a proportionate share of the cost of administration, sale, taxes, and preservation of the property. We think this deduction was unwarranted . . ." p. 484.

In re La Rowe, 91 F.Supp. 52 (D.C. Minn.1950), again was a determination of the same point. There, Judge Joyce stated:

"It is not clear whether the secured creditor who appealed in the Rubenstein case consented or objected to the sale free and clear. The court does advert to the 'objections of certain secured creditors', but it nowhere appears whether the appellant was one of this group. However, it is clear that the decision reached by the court in the Rubenstein case was not made to turn upon the presence or absence of consent. I read the Rubenstein case as holding that where mortgaged property is sold free and clear by a trustee in bankruptcy for more than sufficient to pay in full all liens, leaving a surplus remaining in the general estate, the costs of administration, sale and preservation of the property must be paid from the general estate . . ." p. 56.

In re McGrath Mfg. Co. of Omaha, Neb., 94 F.Supp. 8 (D.C.Neb.1950), involved a question as to whether the lien claimant was entitled to recover attorney fees in addition to the full amount of its mortgage. In the course of the opinion, Chief Judge Donohoe stated:

". . . The sale price was adequate to cover the entire claim of the Mortgagee Bank, including principal and interest. The trustee will have to assess the expenses in connection with the sale against the unsecured creditors because he sought to capture their equity in the security (the amount by which the value of the security exceeds the claims it secures); and it would be inequitable to deduct said costs and expenses from the mortgagee's debt instead of from the surplus in hand. Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386 . . ." p. 10.

In light of these authorities from within this circuit, the Court finds that the Bankruptcy Judge committed clear error in deducting from the amount allowed to First Federal as to its claim in the Oak Park proceedings any amount for costs of sale, preservation, or administration. An Order should be entered reversing the Order of the Bankruptcy Judge wherein he deducted the amount of $2,193.33 from the amount which he found due upon the claim of First Federal.

As to the Port City proceedings, wherein the proceeds allocated from the sale of the realty were grossly insufficient to discharge the lien of First Federal, the Court does not find such clear guidance. Collier, supra, pp. 1227–1236, states:

"A great number of courts have adopted the preferable view that where the lienholder expressly or impliedly consents to a sale free of liens and encumbrances, at least where the sale fails to bring in enough to discharge the lien and interest thereon in full, the proceeds are chargeable with the actual costs of the sale, plus costs reasonably incurred in the preservation of the property and the proportion of the administrative expenses (including the fees for the referees' salary and expense fund computed upon the net proceeds realized and the commissions for the receiver or trustee computed on moneys disbursed or turned over) that may properly be attributed to the sale. It has been said that the circumstance of whether or not there is sufficient money in the general estate to defray such expenses 'is immaterial.' . . .

However, the view that a consenting lienholder should be charged with a proportion of the expenses of administration stemming from the sale is not universal. Some courts have held that, despite any consent to a sale free of liens, a lienholder is normally entitled to the full amount of his lien, minus only a contribution to the expense of administration measured by and not in excess of what it would have cost to foreclose the lien in state court."

An early case on this point was decided by the Court of Appeals for the Eighth Circuit and cited in Rubenstein v. Nourse, supra.

In re Harralson, 179 F. 490 (8th Cir. 1910), involves the precise point. The secured creditor joined in a petition that the property securing his indebtedness be sold free of liens, and that his lien be transferred to the proceeds. The sale was duly made, to the lienholder, for less than the amount due on the mortgage debt. The Court stated:

"A court of bankruptcy should not assume charge of incumbered property and liquidate the liens on it, unless there are reasonable grounds for believing some advantage will accrue to the bankrupt's estate. If the validity of the liens is unquestioned, and their amount is such that there is probably no excess of value in the property, it should be surrendered to the lienholders or others entitled, unless some other reason appears for retaining control. A court of bankruptcy is not a court of general jurisdiction for the adjudication of controversies or the administration of assets in which the bankrupt's estate is in no wise interested. If, however, cognizance is taken, it should be assumed some benefit or advantage was expected to accrue to the general creditors, and if it results otherwise it is equitable to make the general estate bear the cost of the proceeding. * * * [W]e need not determine what should be done in case of a sale by a trustee in bankruptcy at the instance or with the concurrence of a lien creditor, a deficit of proceeds, and no general estate." p. 492. This case has been cited and the stated rule followed in later cases too numerous to list. Although, the United States Supreme Court has not passed upon the question, in Louisville Bank v. Radford, 295 U.S. 555 page 584, footnote 14, 55 S.Ct. 854 page 861, 79 L.Ed. 1593 (1935), Justice Brandeis noted:

". . . Where the mortgaged property is sold free of liens for less than the amount of the liens, the bankrupt estate and not the lienholders must bear the costs of the sale." (Citing In re Harralson, supra, and Rubenstein v. Nourse, supra)

The Eighth Circuit apparently is not in accord with the cases relied upon by Collier, supra. The lienholder in this case is in a better position than the lienholder in In re Harralson, supra, as it merely consented to the insistence of the trustee that the property upon which it held a valid and uncontested lien might be sold, so that the unsecured creditors might have the opportunity to recoup any value over and above the lien. Having, through their trustee, had the benefit of the opportunity to recover some equity in the property, it does not seem inequitable that they should bear the costs of their gamble, particularly where the appraisal does not portend a strong probability of recovery. The Court might point out that, had First Federal allocated the bid in line with its liens, the Oak Park general estate would not have benefited, and the Port City general estate would not have been diminished.

The Court finds that the finding of the Bankruptcy Judge that ten percent (10%) of the allowed claim should be deducted from the amount allowed on the claim of First Federal for costs of sale, preservation, and administration was clearly erroneous. An Order should be entered reversing the Order of the Bankruptcy Judge wherein he deducted the amount of $2,090.00 from the amount allowed as the claim of First Federal in the Port City proceedings.

In the event that there is no general estate, or the general estate is not sufficient to pay the actual costs of sale of the Port City realty, then the Court finds that it would be proper to deduct from the claim of First Federal only such actual costs of sale, attributable to the Port City realty, as the general estate is not sufficient to pay, but in no event to exceed the probable costs of a foreclosure action in state court. Such foreclosure costs might properly include the filing fee, sheriff's fee, advertising cost, and commissioner's fee, In re Stewart, 193 F. 791 (D.C.La.1912), but should not include hypothetical attorney fees, referee's or trustee's fees for handling this property. L. Maxcy, Inc. v. Walker, 119 F.2d 535 (5th Cir. 1941), cert. den. 314 U.S. 647, 62 S.Ct. 90, 86 L.Ed. 519.

It is, therefore, considered, ordered and adjudged that the findings of fact and Orders of the Bankruptcy Judge, deducting costs of sale and administration from the allowed claims of First Federal Savings and Loan of Pine Bluff in each of the proceedings, Re: Port City Construction Co., Inc., PB 74–25–B, and Re: Oak Park Heating & Air Conditioning Co., Inc., PB 74–26–B, be and they are hereby reversed and, in all other respects, said Orders are affirmed. These two proceedings are remanded to the Bankruptcy Judge for further proceedings consistent with this Opinion.

**Richard KECK et al.**

v.

**EMPLOYEES INDEPENDENT ASSOCIATION, by Earl J. Wenner, its General Chairman, et al.**

**Civ. A. No. 74–429.**

United States District Court,
E. D. Pennsylvania.

Dec. 23, 1974.

Richard H. Markowitz, Stephen C. Richman, Philadelphia, Pa., for plaintiffs.