**In re Donald B. KASPER, Debtor.**

No. 02–01791.

United States Bankruptcy Court,
District of Columbia.

April 27, 2004.

Michael Klima, Baltimore, MD, for Ford Motor Credit Co.

Steven Weinberg, Washington, DC, for Donald B. Kasper.

*DECISION RE MOTION TO COMPEL DEBTOR'S COMPLIANCE WITH 11 U.S.C. § 521(2)*

S. MARTIN TEEL, JR., Bankruptcy Judge.

The court will deny the motion filed by Ford Motor Credit Company ("Ford") to

1. All chapter and section citations in this decision are to the Bankruptcy Code unless otherwise indicated.

2. The Advisory Committee Notes (1997) to Official Form No. 8 indicate that "the form is

compel the debtor, Donald B. Kasper, to comply with 11 U.S.C. § 521(2).

## I

### PROCEDURAL POSTURE OF CASE

Kasper filed his voluntary bankruptcy petition under chapter 7 of the Bankruptcy Code (11 U.S.C.)[1] on September 11, 2002, and owned at that time an automobile. Kasper scheduled Ford as holding a lien on that car, securing a claim in excess of the car's scheduled value. Kasper did not claim the car as exempt. Since the filing of the case, the automatic stay of § 362(a) has stayed Ford from enforcing its lien, but Ford has not filed a motion for relief from the automatic stay. Nor has Ford alleged that a default exists that would permit enforcement of its lien if the automatic stay were not in effect.

On October 10, 2002, Kasper filed his Statement of Intention under § 521(2), utilizing Official Form 8. Kasper, who was current on his payments to Ford, simply indicated "retain possession" on his Statement of Intention without checking any of the three options appearing on the form: "Property is claimed as exempt;" "Property will be redeemed pursuant to 11 U.S.C. § 722;" or "Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c)."[2]

The chapter 7 trustee has filed a Report of No Distribution stating that "there is no property available for distribution" and certifying pursuant to F.R. Bankr.P. 5009 that "the estate ... has been fully administered." More than 30 days have passed since he filed that report, and, but for Ford's outstanding mo-

not intended to take a position regarding whether the options stated on the form are the only choices available to the debtor." [Citations omitted.]

tion, the case is ready to be closed under Rule 5009. Upon closing of the estate, the estate's property will be abandoned to Kasper by operation of § 554(c).[3] Kasper has already received a discharge and, accordingly, upon such abandonment, the automatic stay of § 362(a) will no longer bar Ford from enforcing its lien to the extent authorized by nonbankruptcy law.[4]

Ford's motion takes the position that § 521(2) requires a debtor to file a statement stating that the debtor intends to do one of three things: (1) surrender the property; (2) redeem the property; or (3) reaffirm the debt. Ford seeks to compel Kasper to choose one of these options. Kasper takes the position that he complied with § 521(2) by simply stating that he intends to retain possession.

## II

### THE GOVERNING STATUTE

Section 521(2) provides, in relevant part, that:

> (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate-
>
> > (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier ..., the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
> >
> > (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
> >
> > (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

The "surrender" option under § 521(2), which does not specify what "surrender" encompasses, must be read in the context of a companion provision, § 521(4), which requires that the debtor shall—

> (4) if a trustee is serving in the case, surrender to the trustee all property of the estate . . . .

The statute does not specify any consequences of, or remedies for, a debtor's failure to comply with § 521(2), except that a chapter 7 trustee is required under § 704(3) to "ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title."[5]

## III

### THE DIVIDED CASE LAW AND A SUMMARY OF THIS COURT'S APPROACH

Most courts appear to assume that the surrender option entails a surrender to the

---

**3.** A trustee's report of no distribution itself effects no abandonment as a trustee may withdraw such a report prior to the court's closing the case.

**4.** *See* § 362(c).

**5.** Additionally, § 1307(c)(10) provides that the court may convert a chapter 13 case to chapter 7 or dismiss the case "only on request of the United States trustee, [for] failure to timely file the information required by paragraph (2) of section 521." However, § 521(2) by its terms applies only when the debtor has filed a petition under chapter 7.

lienholder, not to the trustee, and then frame the issue as whether § 521(2) permits a debtor to state a naked intention to retain (without stating an intention to exempt, redeem, or reaffirm) and thereby comply with the statute. The Courts of Appeals for the Second, Fourth, Ninth, and Tenth Circuits adopt what may be called the "non-exclusive approach," holding that § 521(2) does not preclude the debtor from simply stating that she intends to retain without indicating an intention to exempt, redeem, or reaffirm. *See McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668, 673 (9th Cir.), *cert. denied,* 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); *Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow),* 126 F.3d 43, 53 (2d Cir.1997), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345, 347–49 (4th Cir.1992); *Lowry Fed. Credit Union v. West,* 882 F.2d 1543, 1547 (10th Cir.1989).

The Courts of Appeals for the First, Fifth, Seventh, and Eleventh Circuits adopt an "exclusive approach" by holding that § 521(2) sets forth exclusive options, precluding the debtor from indicating a naked intention to retain, even when such retention without exemption, redemption, or reaffirmation would not give rise to a right of lien enforcement under nonbankruptcy law. *Bank of Boston v. Burr (In re Burr),* 160 F.3d 843, 849 (1st Cir.1998); *Johnson v. Sun Fin. Co. (In re Johnson),* 89 F.3d 249, 250 (5th Cir.1996); *Taylor v. AGE Fed. Credit Union (In re Taylor),* 3 F.3d 1512, 1517 (11th Cir.1993); *In re Edwards,* 901 F.2d 1383, 1387 (7th Cir. 1990).

A third approach is to hold that a debtor's stated intention to "surrender" under § 521(2)(A) entails nothing more than the debtor's complying with her obligation under § 521(4) to surrender the property to the processes of the trustee's administration of the estate, and eventually (in most cases) to the processes of nonbankruptcy law. *See In re Lair,* 235 B.R. 1 (Bankr. M.D.La.1999). *See also BankBoston, N.A. v. Claflin (In re Claflin),* 249 B.R. 840, 848 n. 6 (1st Cir. BAP 2000). *Cf. Green Tree Financial Servicing Corp. v. Theobald (In re Theobald),* 218 B.R. 133 (10th Cir. BAP 1998) (surrender option does not alter non-bankruptcy law to require a debtor to deliver her title to real property to lienholder).

I view § 521(2) as principally a notice statute, and not as one that alters the nonbankruptcy law rights of either the debtor or the lienholder. That view is supported by two alternative approaches.

The first approach is that a debtor's stated intention to "surrender" under § 521(2) does not require turnover to the lienholder. It serves instead as notice that the debtor will not exempt, redeem, or reaffirm, and that if the lienholder believes that its lien is enforceable, and wishes to enforce it, then the lienholder should proceed to take the necessary steps to do so (including obtaining relief from the automatic stay).

Alternatively, if a stated intention to "surrender" under § 521(2) **does** require turnover to the lienholder, then I view the courts that adopt the non-exclusive approach regarding retention as following the better rule, but with a qualification: under § 521(2) a debtor may state a naked intention to retain, but (contrary to some decisions) § 521(2) does not alter any nonbankruptcy law right in the lienholder to enforce its lien.

## IV

GIVEN THE LONG–STANDING PRIN-
CIPLE THAT LIENS GENERAL-
LY PASS THROUGH BANKRUPT-
CY UNAFFECTED, § 521(2)
OUGHT NOT BE VIEWED AS AL-
TERING NONBANKRUPTCY LAW
REGARDING LIEN ENFORCE-
MENT UNLESS SUCH AN INTEN-
TION IS CLEARLY EXPRESSED

 A lien generally remains unaf-
fected by the bankruptcy process in a case
under chapter 7 of the Bankruptcy Code,
and this was true under chapter VII of the
Bankruptcy Act as well. *See Dewsnup v.
Timm,* 502 U.S. 410, 417, 419, 112 S.Ct.
773, 116 L.Ed.2d 903 (1992). The excep-
tions to this general rule are clear and
unambiguous, and include the following:
the trustee sells the property free and
clear of liens under § 363; the lien is
avoided under § 522(f), § 544, § 547, or
§ 548; the debtor redeems the property
under § 722; and the lienholder's non-
bankruptcy law rights are altered via a
reaffirmation agreement under § 524(c).
The Court in *Dewsnup* further observed
that Congress does not "write 'on a clean
slate'" when it amends the bankruptcy
laws, and that the Court—

> has been reluctant to accept arguments
> that would interpret the Code, however
> vague the particular language under
> consideration might be, to effect a major
> change in pre-Code practice that is not
> the subject of at least some discussion in
> the legislative history.

*Dewsnup,* 502 U.S. at 419, 112 S.Ct. 773
(citations omitted).

Moreover, in *Butner v. United States,*
440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136
(1979), the Court held that unless the
bankruptcy statute provides for the altera-
tion of state law rights, the bankruptcy
statute is not to be applied in a manner
that supplants state law rights and reme-
dies based on courts' perceptions of what
is equitable. It observed that "[p]roperty
interests are created and defined by state
law" (*Butner,* 440 U.S. at 55, 99 S.Ct. 914),
and that "state laws are ... suspended
only to the extent of actual conflict with
the system provided by the Bankruptcy
Act of Congress" (*Butner,* 440 U.S. at 54
n. 9, 99 S.Ct. 914 (citations omitted)).[6]

 If Congress had intended § 521(2)
to alter lienholders' remedies (by confer-
ring on them a right of turnover that does
not exist under nonbankruptcy law), Con-
gress would have made clear that it per-
ceived a bankruptcy reason for altering
such state law rights, and would have
made clear that it intended to alter them.
It did not do that, and thus under *Dewsn-
up,* § 521(2) cannot be viewed as altering
nonbankruptcy law regarding enforcement
of liens. In turn, under *Butner,* the courts
are constrained from going further than
§ 521(2) itself by adopting a judge-made
rule, based on their own policy perceptions
of what is equitable, that alters lienholders'
(and, correspondingly, debtors') rights re-
garding when and how a lien can be en-
forced.[7]

---

**6.** Some lower courts had ruled that mortgag-
ees, as a matter of equity, ought to have an
automatic right to rents upon the mortgagor
filing bankruptcy, but the Court in *Butner*
concluded that "undefined considerations of
equity provide no basis for adoption of a
uniform federal rule affording mortgagees an
automatic interest in the rents as soon as the
mortgagor is declared bankrupt," and that the

statute ought to be applied in a manner de-
signed "to ensure that the mortgagee is af-
forded in federal bankruptcy court the same
protection he would have had under state law
if no bankruptcy had ensued." *Butner,* 440
U.S. at 56, 99 S.Ct. 914.

**7.** As explored at length in *Lair,* some courts,
in the guise of interpreting § 521(2) but in
contravention of *Butner,* adopt an equitable

## V

### NOT ALL LIENS ARE ENFORCE-ABLE UNDER NONBANKRUPT-CY LAW BASED ON THE DEBTOR HAVING FILED BANK-RUPTCY

Many liens are not enforceable under nonbankruptcy law after bankruptcy because the debtor has remained current on the debt secured by the lien and has committed no other act that gives rise to a right to enforcement of the lien under nonbankruptcy law. Not all security agreements include a provision that the lien is enforceable upon the debtor's filing bankruptcy. Even when the agreement does include such an *ipso facto* clause, that clause may be unenforceable under nonbankruptcy law. *See, e.g.,* Fred W. Bopp, III, *To Reaffirm or Not to Reaffirm: Much Ado About Nothing or the Tempest?,* 15 Me. B.J. 86, 93 (2000) ("[U]nder Massachusetts law, it appears that a creditor may not proceed to repossess its collateral based solely on the borrower's

bankruptcy filing or insolvency." [Footnote omitted.] ).[8] Moreover, the enforcement of liens under nonbankruptcy law often does not entail the debtor's losing possession of the property until after the lienholder conducts a sale of the collateral. For example, real estate liens often include no right to obtain possession prior to the collateral having been sold at a foreclosure sale. Section 521(2) fails to address the consequences that would arise from giving lienholders a new federal right to obtain possession of real property prior to foreclosure, including whether the lienholder would be free to enjoy the possession of the debtor's real property for an extended period without foreclosing. Finally, if the enforcement of a lien does entail obtaining possession of the property, nonbankruptcy law may bestow upon the debtor rights that may prevent or delay the lienholder's obtaining possession, including notice requirements, cure opportunities, and the opportunity to challenge the existence of a default.[9]

---

rule that alters the nonbankruptcy law of lien enforcement. At one extreme, some decisions, criticized in *Lair,* 235 B.R. at 27–34, view the debtor's need for a "fresh start" as warranting allowing the debtor to retain the collateral so long as there is no default other than a default based on a due-on-bankruptcy clause, and override such *ipso facto* clauses. At the other extreme, other decisions, criticized in *Lair,* 235 B.R. at 34–39, and 51–54, view the creditor's need for a debtor to be personally liable for the debt as warranting the adoption of a rule requiring turnover (even when nonbankruptcy law does not permit enforcement of the lien) if the debtor does not exempt, redeem, or reaffirm.

8. Some courts have held that, as a matter of **bankruptcy law**, due-on-bankruptcy clauses remain unenforceable after the debtor has obtained a discharge and the property has passed through bankruptcy. *See, e.g., In re Brock,* 23 B.R. 998 (Bankr.D.D.C.1982). If Ford's contract with Kasper included such a clause, I will assume in Ford's favor (without actually deciding the issues) that, first, *Brock*

and similar decisions are in error to the extent that they hold that the Bankruptcy Code invalidates such clauses, *see Lair,* 235 B.R. at 6 n. 5, and that, second, applicable nonbankruptcy law does not bar enforcement of due-on-bankruptcy clauses. As a practical matter, those two issues may never arise between these parties because Ford may simply decide to accept monthly payments by Kasper until the debt is paid in full rather than seeking to enforce its lien pursuant to such a clause (if such a clause exists) and potentially recovering less. Many times the theoretical prospect of foreclosure based solely on a due-on-bankruptcy clause is simply not realistic, such that reaffirmation is not in a debtor's best interest and would impose an unwarranted hardship. *See* § 524(c)(3)(B) and § 524(c)(6)(A)(ii).

9. Such nonbankruptcy law issues regarding the enforceability of liens are usually not decided by bankruptcy courts in a no-distribution chapter 7 case because they usually have no impact on the administration of the case once the bankruptcy trustee elects not to liq-

When nonbankruptcy law does not permit a lien to be enforced, physical turnover of the collateral makes no sense; the lienholder is not entitled to it, and it would serve no purpose. Any interpretation of § 521(2) that would require such turnover (when the lienholder has no right to such turnover under nonbankruptcy law) would constitute a radical alteration of lien rights, and would be inconsistent with the long-standing concept that liens on property that passes through bankruptcy remain unaltered. Had Congress intended such a dramatic alteration of law, it is likely that it would have made that intent clear, and addressed the mechanics and consequences of such turnover. It did neither.

## VI

## THE LEGISLATIVE HISTORY DOES NOT SUPPORT READING THE STATUTE AS ALTERING NON-BANKRUPTCY LAW RIGHTS

Nothing in the legislative history to § 521(2) supports reading § 521(2) as compelling a debtor to elect to turn over possession of collateral to the lienholder if the debtor does not elect to reaffirm, redeem, or exempt. According to one court, the legislative history simply confirms that the statute is a muddle. The court in *In re Weir*, 173 B.R. 682, 685 (Bankr.E.D.Cal. 1994), observed, in addressing the sanctions for failure to comply with the statute, that the statute's text "is so enigmatic . . . that the most that can be said in its defense is that the Congress settled upon a calculated ambiguity to resolve an intractable difference of opinion." After reviewing the legislative history, that court concluded that:

> In view of [the] legislative history, it should come as no surprise that section 521(2) is written in mud. To some, it is disgraceful draftsmanship. To others, it is inspired tergiversation. Whatever, the provision smacks of compromise and calculated ambiguity.

*Weir*, 173 B.R. at 689. The *Weir* court apparently viewed the legislative history as furnishing no support for viewing the statute as intended to alter nonbankruptcy law rights.

However, other courts have gone even further and read the legislative history as affirmatively supporting an interpretation of the statute as a notice statute (not as one that alters nonbankruptcy law rights). In *In re Castillo*, 209 B.R. 59, 71 (Bankr. W.D.Tex.), *rev'd sub nom. Government Employees Credit Union v. Castillo*, 213 B.R. 316 (W.D.Tex.1997), the court viewed the statute as presenting an "interpretive conundrum," and traced in detail the statute's legislative history from its earliest origins in legislation proposed by a group of creditors, concluding that:

> In sum, we find the legislative history to be persuasive, strongly suggesting that the statute was created simply to ensure that the creditor be informed of the debtor's intent. Had the credit industry desired their provision to serve a greater role than that of notice, it would seem that they would have provided a draft which included a means of ready enforcement for Congress. This they did not do, and even if they had, Congress elected not to enact it.

*Castillo*, 209 B.R. at 74–75. *See also In re Belanger*, 118 B.R. 368, 370–72 (Bankr. E.D.N.C.), *aff'd sub nom. Home Owners Funding Corp. of Am. v. Belanger*, 128 B.R. 142 (E.D.N.C.1990), *aff'd*, 962 F.2d 345 (4th Cir.1992).

In any event, what is clear is that the legislative history (as recounted in *Weir*, *Castillo*, and *Belanger*) cannot be inter-

uidate the property. *See Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2d Cir.1983).

preted as evidencing an intention to alter prior law to create in § 521(2) a new bankruptcy obligation of turnover to the lienholder if the debtor does not elect to exempt, redeem, or reaffirm.

## VII

### THE MEANING OF "SURRENDER" IN § 521(2)(A)

There are two approaches to interpreting § 521(2) that avoid altering nonbankruptcy law rights. The first of these is to interpret the "surrender" option as not entailing a turnover. The other is to interpret the "retention" option as not being limited to exemption, redemption, or reaffirmation.

■ This part addresses the first approach. If it is assumed for purposes of analysis that the only retention options available to a debtor are exemption, redemption, or reaffirmation, then the statute is nevertheless susceptible of an interpretation that avoids altering nonbankruptcy law rights. To wit, the term "surrender" in § 521(2)(A) should be interpreted as simply meaning to surrender the property to those processes the Bankruptcy Code imposes when a debtor does not exempt, redeem, or reaffirm.

Viewed in isolation, the term "surrender" in § 521(2)(A) is at best ambiguous. However, when § 521(2)(A) is read in the context of its companion provision, § 521(4), which requires that the debtor shall "surrender to the trustee all property of the estate," and of the lack of a clear congressional intention to alter nonbankruptcy law, § 521(2)(A)'s use of the term "surrender" plainly was not intended to mean turning over physical possession to the lienholder.

A debtor's "surrender" obligation under § 521(4) always exists as to estate property in a chapter 7 case, and thus also always exists as to property covered by § 521(2).[10] By electing to surrender under § 521(2)(A), a debtor simply opts to a § 521(4) surrender without the lienholder's rights having been altered by way of opting instead to exempt, redeem, or reaffirm. That interpretation avoids violating § 521(2)(C)'s command that § 521(2)(A) ought not alter Bankruptcy Code rights of the debtor and the trustee in the estate's property.

### A.

■■ Generally, "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (quoting from prior decisions; citations omitted).[11] Moreover:

> Statutory interpretation ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear ....

---

**10.** A trustee always serves in a chapter 7 case (*see* §§ 701 and 702), and chapter 7 is the only chapter to which § 521(2) applies.

**11.** In *Dewsnup*, 502 U.S. at 419–20, 112 S.Ct. 773, the Court gave an ambiguous term different meanings when it appeared twice in the *same provision so that it would not effect a* major change in pre-Code law without Congress having addressed such a change in the legislative history or having mentioned it elsewhere in the Code. Here, however, we have the reverse: if the same term appearing in companion provisions is given different meanings, that would effect creation of a remedy that was not recognized under prior bankruptcy law (a bankruptcy right of turnover when no such right may exist under nonbankruptcy law).

*United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *See also Gutierrez v. Ada*, 528 U.S. 250, 255, 120 S.Ct. 740, 145 L.Ed.2d 747 (2000) ("[W]ords and people are known by their companions.") So, the court will first turn to what "surrender" means in § 521(4).

A debtor complies with her surrender obligation under § 521(4) by allowing the trustee to administer the property. In other words, "surrender" under § 521(4) requires that the debtor not interfere with the processes under the Bankruptcy Code for administration of the property as property of the estate. However, such a surrender often entails no turnover to the trustee, as the trustee may decide not to attempt to sell the property, which eventually results in the property being subjected to the processes of nonbankruptcy law.

This can occur in a number of ways. First, the debtor may have claimed the property as exempt, and if no one timely objects, it becomes exempt and hence no longer estate property. *See* § 522(b) and 522(1). Second, the trustee may abandon the property under § 554(a) or § 554(b) during the case,[12] or under § 554(c)[13] by allowing the case to be closed without having done anything with the property. Third, if the court grants relief from the automatic stay pursuant to § 362(d) to permit a lienholder to enforce its lien, a foreclosure sale may terminate the estate's interest in the property.[14]

What "surrender" in § 521(2)(A) must mean, therefore, is surrendering the property under § 521(4) to bankruptcy processes of trustee administration, including potentially such an abandonment (and the return of the parties to their rights under nonbankruptcy law).

■ That "surrender" does not automatically entail a turnover of physical possession to the trustee is made evident by the procedure for enforcing turnover. When a trustee wishes to pursue obtaining physical possession pursuant to § 521(4), she proceeds by a motion against the debtor for turnover, *see* F.R. Bankr.P. 7001(1) and 9013. In other words, § 521(4)‍ does not embody a self-executing provision for turnover partaking an injunctive character. Instead, before turnover is ordered, a debtor has the right to demonstrate to the court that turnover is unnecessary to administration of the estate.[15]

12. Sections 554(a) and 554(b) provide:
 (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
 (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

13. Section 554(c) provides:
 Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

As § 554(c) recognizes, permitting the property to be abandoned constitutes administration of the property, with turnover not required to accomplish administration.

14. Those three possibilities explain why a trustee most often opts against taking possession of encumbered property. A trustee does not want to incur the expense of acting as a storage facility for property that is property of the estate at the commencement of the case but that eventually will be exempted by or abandoned to the debtor, or that will be disposed of by the lienholder by way of lien enforcement.

15. For example, the debtor shows that she has claimed the entirety of the property as exempt and that the trustee has no basis upon which she could object to that exemption.

■ Moreover, as discussed in *Lair*, 235 B.R. at 66–67, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure use the word "deliver" when turning over physical possession is contemplated.[16] Accordingly, a surrender of the property to the trustee's administration simply entails taking no action inconsistent with the estate's interest, and is an act of constructive versus actual delivery. *See Lair*, 235 B.R. at 66–68. Stated differently, "surrender" under § 521(4) means surrendering the property to the processes of administration under the Bankruptcy Code by the trustee.

### B.

Because "surrender" in § 521(4) does not mean turning over physical possession, it ought not mean that in § 521(2)(A) either. Section 521(2)(A) also does not address to whom surrender is to be made. Following the same logic as above, it must mean surrender to the trustee under § 521(4) as that is the only surrender in § 521 identifying a person to whom surrender is to be made. ·

Indeed, by reason of § 521(2)(C) ("nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title"), this is the required interpretation. If "surrender" in § 521(2)(A) were interpreted to mean

turnover of possession to the lienholder, then § 521(2)(B) would require the debtor to turn over possession to the lienholder within 45 days after filing her notice of intent. That type of duty would be inconsistent with rights conferred on the trustee and the debtor by other Bankruptcy Code provisions, and hence that interpretation is barred by § 521(2)(C). Instead, "surrender" must mean the debtor's surrender obligation under § 521(4) as that is the only interpretation that allows the statute to operate consistently with the whole Bankruptcy Code and the rights in the property conferred by the Code on the trustee and the debtor.

### 1.

First, § 521(2)(C) makes plain that a trustee's right to administer property of the estate and to have the debtor surrender the property to her for such administration remains in place notwithstanding anything in § 521(2). So "surrender" in § 521(2)(A) cannot mean anything inconsistent with the trustee's rights to "surrender" under § 521(4). A trustee's exercise of her rights to have the collateral surrendered to her under § 521(4) for administration may very well not be completed until well after the debtor has opted "surrender" under § 521(2)(A).[17] It would be inconsistent with § 521(4), and hence prohibited by § 521(2)(C), to require turnover

---

Or, as another example, the debtor demonstrates that the property is fully encumbered and not needed for operation by the trustee of a business, such that it is of no value or benefit to the estate.

**16.** *See* § 727(d)(2) (drawing a distinction between delivering and surrendering property to the trustee in § 727(d)(2)); § 542(a) (requiring third parties to "deliver" (not "surrender") property of the estate in their possession that is of consequential value or benefit to the estate); § 543(b) (requiring a custodian to deliver property of the debtor to the trustee unless excused under § 543(d)); F.R.

Bankr.P. 7001(1) (addressing proceedings "to compel the debtor to deliver property to the trustee").

**17.** The trustee's rights under § 521(4) include a trustee's taking due time deciding whether the property is worth selling or is susceptible to lien avoidance that will inure to the benefit of the estate under § 551 (and not to the benefit of the debtor under § 522(g)), and includes the right, before the case is closed, to change her mind despite having already filed a report of no distribution.

to the lienholder prior to the trustee's having administered the property.

Thus, choosing the surrender option under § 521(2) cannot mean that a debtor must turn over the collateral to the lienholder. Instead, it is "surrender" to the trustee under § 521(4) that is contemplated by the term "surrender" under § 521(2)(A). *See Lair,* 235 B.R. at 60–67. *See also BankBoston, N.A. v. Claflin (In re Claflin),* 249 B.R. at 848 n. 6. *Cf. Green Tree Financial Servicing Corp. v. Theobald (In re Theobald),* 218 B.R. at 134–36 (choosing surrender option does not alter nonbankruptcy law to require the debtor to deliver title of real property to lienholder).

### 2.

Second, the operation of the automatic stay of § 362(a) further demonstrates that § 521(4) bars interpreting "surrender" under § 521(2)(A) as entailing surrender in the form of turnover to the lienholder. Until the property becomes exempt or abandoned, or the lienholder obtains an order under § 362(d) granting relief from the automatic stay, a turnover to the lienholder would place the lienholder in the posture of violating the automatic stay as it would be obtaining possession of and exercising control over property of the estate, and taking steps to enforce its lien. *See* § 362(a)(3) and § 362(a)(4). So § 521(2)(C) demonstrates once again that Congress did not envision "surrender" under § 521(2)(A) as entailing turnover to the lienholder.

Interpreting a debtor's election of the "surrender" option in § 521(2)(A) as requiring turnover to the lienholder would apply even in those instances that nonbankruptcy law confers no present right to enforce the lien, and in those instances in which relief from the automatic stay would be unavailable under the standards of § 362(d). Congress could not have intended that result. As stated in *Mayton v. Sears, Roebuck & Co. (In re Mayton),* 208 B.R. 61, 66–67 (9th Cir. BAP 1997):

> [C]onsidering the central role the automatic stay plays in bankruptcy proceedings, it would not be appropriate to infer that Congress by its use of the term "surrender" intended to nullify the provisions of § 362(a) together with the contract rights under state law of the consumer debtor and creditor relative to retention or surrender of collateral in which the creditor has a purchase money secured interest.
>
> . . .
>
> . . . [T]o equate "surrender" as an equivalent to "foreclosure" would amount to abrogation of the automatic stay of § 362 for the benefit of secured consumer creditors. If Congress desired to provide such a distinctive right to a particular class such as consumer secured creditors, it would have said so, particularly in light of § 521(2)(C).

### 3.

Finally, § 521(2)(C) bars treating "surrender" in § 521(2)(A) as turnover to the lienholder because such turnover would be inconsistent with the debtor's rights that arise when property is abandoned. Most often, abandonment arises under § 554(c) when the case is closed. Congress amended § 554(c) in 1984, in the same statute that enacted § 521(2)(A), to provide for the property to be "abandoned to the debtor" unless otherwise ordered. That right under § 554(c) is a right conferred by the Bankruptcy Code. In turn, that right, by the explicit terms of § 521(2)(C), remains unaltered by § 521(2)(A) and (B).

■ Indeed, the consequences of abandonment, even when the Code does not expressly say that abandonment is to the debtor, are inconsistent with treating

§ 521(2)(A) as conferring a right of turnover on the lienholder when the debtor elects the "surrender" option. Upon abandonment, whether under § 554(c) or another paragraph of § 554 that does not expressly say that abandonment is to the debtor, both the debtor and the lienholder are restored to all prepetition rights in the property. *See Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990) (the property "reverts to the debtor and stands as if no bankruptcy petition was filed" (citations omitted)), *aff'd*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *In re Cruseturner*, 8 B.R. 581, 591 (Bankr.D.Utah 1981) (interpreting § 554 prior to the 1984 amendment and holding that § 554 is "in keeping with cases under former law which hold that title and right to the property reverts to its pre-bankruptcy status."); 5 *Collier on Bankruptcy* ¶ 554.02[3] (15th ed. as revised June 2002). The Supreme Court held that this was the outcome under the Bankruptcy Act, at least as to the question of title (*see Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 81 L.Ed. 827 (1937) (title reverts to the debtor as of the petition date)), and Congress gave no indication that it was altering that outcome under the Bankruptcy Code (either before or after the Code's amendment to add § 521(2)(A)).

One consequence of abandonment under § 554 is that the debtor is relieved of her surrender obligation under § 521(4) and restored to whatever rights of possession she otherwise had. Such reversion, of course, does not erase a lienholder's possession held on the petition date (or obtained postpetition via a lifting of the automatic stay). As stated in *Cruseturner*, 8 B.R. at 591 (emphasis added):

> [W]hoever had the possessory right to the property at the filing of bankruptcy again reacquires that right. Normally this party is the debtor, but it is conceivable that a creditor may be entitled to possession instead if, **by the exercise of its contractual or other rights**, it held a possessory interest prior to the filing of bankruptcy.[18]

The abandonment provisions are sufficiently flexible to allow the court to respect possessory rights already acquired by the lienholder.[19]

This is true whether the lienholder acquired possession prepetition,[20] or acquired

18. *See also In re Jandous Elec. Constr. Corp.*, 96 B.R. 462 (Bankr.S.D.N.Y.1989); *In re R–B–Co., Inc. of Bossier*, 59 B.R. 43, 45 (Bankr. W.D.La.1986); *In re Caron*, 50 B.R. 27 (Bankr.N.D.Ga.1984) (property is abandoned to the debtor and his creditors as their interests may be under state law, and a creditor "may then use whatever legal procedure may be available under state law to obtain legal possession").

19. Indeed, the legislative history to the Bankruptcy Reform Act of 1978 recognized this flexibility by stating that "[a]bandonment may be to any party with a possessory interest in the property abandoned," while still acknowledging that scheduled property not administered before the close of the case "is deemed abandoned to the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 377 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. at 92

(1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5878, 5963, 6333.

20. When a lienholder has seized collateral prepetition, courts disagree whether § 362(a)(3) requires the lienholder to turn over the collateral to the bankruptcy trustee. *Compare In re Bernstein*, 252 B.R. 846, 849 (Bankr.D.D.C.2000) (§ 362(a)(3) does not require turnover); and *In re Young*, 193 B.R. 620, 624–25 (Bankr.D.D.C.1996) (same), *with TranSouth v. Sharon (In re Sharon)*, 234 B.R. 676 (6th Cir. BAP 1999). Even if the lienholder has turned over the collateral to the trustee in order to avoid the arguable possibility of violating § 362(a)(3), or pursuant to the trustee's obtaining a turnover order under § 542(a) as interpreted in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (IRS could be ordered to turnover tangible personal proper-

such possession postpetition pursuant to exercise of its nonbankruptcy remedies after obtaining relief from that automatic stay of § 362(a). Where, however, the lienholder has not obtained possession, abandonment accords a debtor the right to have her possessory interest restored to her free of any further surrender obligation. If "surrender" in § 521(2)(A) were held to mean turnover of possession to the lienholder, the debtor's right under the Bankruptcy Code to possession upon abandonment would be altered by operation of § 521(2)(A) and § 521(2)(B). That interpretation is prohibited because § 521(4) commands that § 521(2)(A) not be interpreted in a manner that alters such a right.

In response to that conclusion, it might be argued that under the abandonment provisions the court can order abandonment to an entity other than the debtor, and thus that the debtor's rights under the abandonment provisions would not be altered by interpreting "surrender" in § 521(2)(A) as meaning turnover to the lienholder. However, under § 521(2)(B), that interpretation would require turnover to the lienholder without an order for turnover, with the prospect of court-imposed sanctions for failure to comply with that statutory duty. That is an alteration of the debtor's right to have the property abandoned to her unless the court orders otherwise. As *Cruseturner* demonstrates, a court would order possession to be abandoned to a lienholder only if the lienholder had already acquired the possessory interest.

### C.

If, nevertheless, the term "surrender" in § 521(2)(A) could be read more broadly as

addressing a lienholder's rights under nonbankruptcy law, not just the trustee's rights under the Bankruptcy Code, the term, analogously to § 521(4), ought to be viewed as meaning surrendering the property to the processes of nonbankruptcy law, and not as commanding a physical turnover of the property to the lienholder. Only in that way could the statute be interpreted consistently with the reasoning set forth above.

That Congress did not contemplate that surrender under § 521(4) to mean turnover, particularly because that may be unnecessary to further the trustee's administrative powers under the Bankruptcy Code, correspondingly demonstrates that it did not intend "surrender" under § 521(2) to mean turnover, particularly because a lienholder may have no right to enforce its lien under nonbankruptcy law. Even when the lienholder has a right to enforce its lien under nonbankruptcy law, and when that right includes the right to obtain possession incident to enforcement, Congress gave no indication that it intended to create a federal right to obtaining such possession without following the steps that must be followed under nonbankruptcy law to obtain such possession.

### D.

Congress gave no indication that in adding § 521(2) to the Bankruptcy Code in 1984, it intended to alter prior law under the Bankruptcy Code by creating a new bankruptcy right of turnover. Such a new right would have been inconsistent as well with prior law under the Bankruptcy Act.

Under the Bankruptcy Act, no statutory provision "specifically dealt with the aban-

---

ty despite having seized it prepetition), the abandonment of possession (not title) under even § 554(c) need not be to the debtor: the express language of § 554(c) permits the

court to "order[ ] otherwise," and hence to restore the lienholder and the debtor to where they were on the petition date.

donment of burdensome property in liquidation cases," but the courts nevertheless developed a judicial doctrine of abandonment. 5 Collier on Bankruptcy ¶ 554.LH [1] at 554–14 to 554–15 (15th ed. as revised March 2002) (footnote omitted). Decisions of the courts of appeals under the Bankruptcy Act indicated that a trustee ought to "surrender" real property to lienholders for foreclosure when the property was worth less than the encumbrances upon the property. The word "surrender" in those decisions was used in the context of abandoning the property to nonbankruptcy law processes, not in the context of addressing physical turnover of possession of the real property.

For example, in *In re Harralson,* 179 F. 490, 492 (8th Cir.1910), the court stated the rule:

> If the validity of the liens is unquestioned, and their amount is such that there is probably no excess of value in the property, it should be **surrendered to the lienholders or others entitled**, unless some other reason appears for retaining control. [Emphasis added.]

In *Federal Land Bank of Baltimore v. Kurtz,* 70 F.2d 46 (4th Cir.1934), the bankruptcy referee thought he was powerless to do anything with real property other than to order the trustee to sell it free of liens, even though the property had no equity above the mortgage debt. After quoting *Harralson,* the court of appeals stated that the referee had been in error in thinking that he was "without power to surrender the property to the lienholders in order that the mortgages against it may be liquidated by them ...." *Kurtz,* 70 F.2d at 48. Both *Harralson* and *Kurtz* have been interpreted as simply indicating that a bankruptcy court should generally release fully encumbered property from its proceedings, not as addressing turnover of physical possession. *See Reconstruction Fin. Corp. v. Cohen,* 179 F.2d 773, 776 (10th Cir.1950) ("court should release the encumbered property from the proceeding and thus enable the lienor to foreclose the lien or otherwise realize upon the security").

In *Hoehn v. McIntosh,* 110 F.2d 199, 202 (6th Cir.1940), the court, citing *Kurtz,* stated that "the court should order the release and surrender possession and control of the property to the lienor to foreclose or otherwise proceed in a court of competent jurisdiction." However, in *Hoehn,* the lienholder had already invoked state court processes to take constructive possession of the property to effect a foreclosure, and the holding was that the state court ought not be ousted of jurisdiction unless the trustee showed that there was an equity in the mortgaged property for the bankruptcy estate. It was in that context that the court was addressing surrendering possession to the lienholder—namely, as part of nonbankruptcy law processes already commenced. Moreover, the court acknowledged that the inquiry ordinarily is whether the trustee should sell the property "or surrender it to the lienholders or **others entitled thereto** ..." *Hoehn,* 110 F.2d at 201 (emphasis added). Accordingly, *Hoehn* is entirely consistent with the conclusion that "surrender" to the lienholders in the case law under the Bankruptcy Act simply meant abandonment of the property to the lienholder's rights under the processes of nonbankruptcy law, and not as addressing turnover of physical possession. None of the Bankruptcy Act decisions support an interpretation of "surrender" in § 521(2)(A) as meaning turnover of physical possession to the lienholder where no such right exists under nonbankruptcy law.[21]

---

**21.** *See also* Note, Abandonment of Assets, 53 Colum. L.Rev. 415, 426 (1953) ("A few cases

## VIII

## THE MEANING OF SURRENDER AS OPPOSED TO RETENTION

Before finally concluding that the foregoing is the proper interpretation of "surrender," however, it is necessary to explain what "surrender" under § 521(2)(A) means when the statute uses "retention" in the very same provision as the alternative to "surrender."

### A. *"Surrender" Means Simply Not Electing to Exempt, Redeem, or Reaffirm*

Under § 521(2)(A), a debtor may elect "retention" of the property instead of "surrender" of the property. Obviously the use of the word "retention" suggests that "surrender" means the opposite of "retention." Section 521(2) goes on to lay out three specific retention options: exemption, redemption, or reaffirmation. For the moment, those are assumed to be exclusive retention options, and it is assumed that the "exemption" option entails avoiding the lienholder's lien in order to exempt the value of the collateral that was subject to the lien. In that context, "retention" means invoking Bankruptcy Code remedies that alter the lienholder's rights, and the "surrender" option thus simply means defaulting to the consequences that flow from having decided not to take steps to alter the lienholder's rights. Thus, "surrender" does not equate to turnover. As previously discussed, the "surrender" option can lead to the property passing through bankruptcy and being subjected to the lienholder's nonbankruptcy law

rights, but those rights do not always include a present right to enforce the lien, or a right to obtain possession incident to enforcement of the lien.

### B. *The Meaning and Effect of the Three Retention Options*

The foregoing conclusion requires a detour to explain what each of the statute's three retention options involves and why each entails an alteration of the lienholder's rights.

#### 1. *Redemption*

Section 722 authorizes a debtor who is subject to § 521(2) to:

> redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

By redeeming the property from a lien pursuant to § 722, the debtor may alter the lienholder's nonbankruptcy law rights by paying only the amount of the lienholder's allowed secured claim, which is not necessarily the full amount of the lien claim. *See* § 506(a) (setting forth when a lien claim is an allowed secured claim). Thereby the debtor retains the property free of the lienholder's lien.

#### 2. *Reaffirmation*

Reaffirmation is governed by § 524(c) and (d).[22] Generally, as long as the debtor

---

seem to state that where property subject to a lien is abandoned it passes to the secured creditor, but undoubtedly the import of these dicta is merely that, after an abandonment, secured creditors may immediately pursue the enforcement of their contractual rights against the property." (Footnote omitted.)).

**22.** Those provisions do not use the term reaffirmation agreement, but instead refer to "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title . . . ." *See* § 524(c).

is in compliance with the reaffirmation agreement, it may be anticipated that under that agreement the lienholder foregoes enforcing its lien pursuant to a default that existed prior to entering into the agreement.[23] So reaffirmation is generally viewed as a way for a debtor to avoid lien enforcement based on a preexisting default.

### 3. *Exemption*

The most analytically troubling option is that of exemption. Exemption may mean simply the precise thing that exemption accomplishes under § 522(b) and § 522(1): removing the property from the estate and re-vesting it in the debtor. Alternatively, it may mean exemption in a secondary, more colloquial and practical sense: not only removing the property from the estate, but also shielding the property from any lien. The two possible interpretations are explored below, but as will be seen, for purposes of deciding what the "surrender" option means, it does not matter which interpretation of the "exemption" option is adopted.

#### a.

*The View That "Exempt" in § 521(2)(A) Means Simply to Exempt the Property From the Estate.*

Collier on Bankruptcy ¶ 521.10[5] at 521–41 to 521–42 (15th ed. as revised March 2003) appears to view "exemption" as simply the act of exempting the property from the estate. It states that viewing § 521(2) as requiring surrender, redemption, or reaffirmation:

> ignores the language in section 521(2) giving the debtor the option of stating an intention to claim the property as exempt and to perform that intention within the 45–day period. The debtor could thus fully satisfy the mandate of section 521(2) by stating an intention to retain the property and claim it as exempt, and then making the claim of exemption within 45 days.

If Collier is right, debtors would seldom have to litigate § 521(2) issues, for under that view a debtor who states an intention to retain a car and to exempt it, and who has already scheduled the property as exempt, has literally complied with § 521(2). Collier's view has some support.

First, although a debtor's property is fully encumbered by liens, that property is nevertheless property of the estate under 11 U.S.C. § 541. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). As property of the estate, the property is subject to being exempted from the estate under 11 U.S.C. § 522(b).[24]

---

23. If the agreement does not so provide, the debtor would usually not enter into the agreement absent some special benefit (such as the lienholder's agreement not to enforce its claim against a parent of the debtor who guaranteed the debt), and, moreover, the agreement might fail to pass muster because it is viewed as imposing an undue hardship on the debtor. *See* §§ 524(c)(3)(B) and (6)(A)(i).

24. The property may be claimed as exempt if it fits within whichever set of exemptible property the debtor utilizes (either the set specified by § 522(b)(1) (exemptions listed in § 522(d)) (unless state law has opted out of § 522(b)(1)) or the set specified by § 522(b)(2)(A) (property exempt under non-bankruptcy law)). Even if the property was improperly claimed as exempt, it becomes exempt if no one timely objects. *See* § 522(*l*); F.R. Bankr.P. 4003(b); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

If the debtor exempts the full value of the property (not just the dollar value of the equity in excess of the lien), the trustee will have no incentive to object to the exemption: even if it exceeds statutory limits, she is concerned about the equity that is exempted, not encumbered value that is exempted, so long as the lienholder retains the lien.

■ Second, exemption of the property and avoidance of a lien encumbering the property (accompanied by exemption of the lien once avoided) are different concepts. *See In re Bethea,* 275 B.R. 127 (Bankr.D.D.C.2002).[25] Once exempted, property remains subject to a lien unless the lien is avoided. *See* 11 U.S.C. § 522(c)(2)(A)(i).[26]

Third, § 722 contemplates that property can be exempted even though it is subject to a lien because § 722 permits redemption from a lien (in certain circumstances) "if such property **is exempted** under section 522 of this title . . . ." [Emphasis added.] If exemption means exempting the property from the reach of the lien, there would be no lien from which to redeem the property after it was exempted, so it must not mean that.

■ As an aside, it must be noted that redemption is not limited to exempted property: abandoned property may also be redeemed. So in making both "exemption" and "redemption" § 521(2)(A) options, the statute is not being redundant: if the property cannot be exempted, it might nevertheless be redeemed.

■ Because of all of the foregoing statutory evidence, it is entirely possible that Congress had in mind only exempting the property from the estate, not from the reach of the lienholder. Upon property becoming exempt, and upon the debtor's receipt of a discharge, the lienholder is no longer subject to the automatic stay of 11 U.S.C. § 362(a).[27] The lienholder may be content to await those two events (the collateral becoming exempt and hence non-estate property and the issuance of a discharge order) instead of bothering to file a motion for relief from the automatic stay.[28]

Accordingly, perhaps all Congress had in mind, in allowing a debtor to elect exemption as her § 521(2)(A) option, was that at least when she makes that election she has put the lienholder on notice that the property will soon likely become non-estate property under § 522(1), and the lienholder can plan accordingly and may decide that it is unnecessary to invoke independent processes, compelled abandonment or relief from the automatic stay, which, respectively, result in the property becoming non-estate property or that permit enforcement of the lien despite the property's continued status of being estate

25. Upon being avoided, a lien becomes property of the estate, and in some instances the debtor may then exempt the lien and preserve it for her own benefit. *See* §§ 522(g) and 522(h)(2).

26. § 522(c)(2)(A)(i) provides:
 (c) . . . property exempted under this section is not liable during or after the case for any [prepetition] debt of the debtor . . . , except—
 . . .
 (2) a debt secured by a lien that is—
 (A)(i) not avoided . . . .
The lien would also be unenforceable if it were void under 11 U.S.C. § 506(d). *See* 11 U.S.C. § 522(c)(2)(A)(ii). But voiding of liens is unavailable to a debtor in a case under chapter 7 of the Bankruptcy Code. *See Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

27. The debtor's discharge terminates the automatic stay with respect to acts against the property of the debtor (*see* 11 U.S.C. § 362(c)(2)(C)) and the automatic stay as to estate property ceases upon the property becoming property of the debtor and thereby ceasing to be property of the estate (*see* 11 U.S.C. § 362(c)(1)).

28. How these two events (exemption and discharge) play out time-wise is governed by F.R. Bankr.P. 4003(b) and 4004(a) and (b). Without reciting those rules in detail, it suffices to observe that both exemption and receipt of a discharge may be achieved fairly promptly in most cases (that is, upon passage of 60 days after the first date set for the meeting of creditors) in comparison to awaiting abandonment of the property only at the close of the case pursuant to § 554(c).

property. When a debtor elects, instead, the "surrender" option, the lienholder knows that the property will not become non-estate property until the trustee disposes of it or abandons it, and thus the lienholder may decide to seek relief from the automatic stay.

Interpreting "exemption" in that fashion suggests that the statute is more like a notice statute, and certainly does not suggest any reason why "surrender" in § 521(2)(A) ought not be interpreted as set forth above. If the debtor elects the "surrender" option, the creditor is on notice that it may need to file a motion for relief from the automatic stay if it wishes to move to an earlier date the time when it may enforce its nonbankruptcy law rights.

b.

### The Interpretation of "Exempt" in § 521(2)(A) as Meaning Avoiding the Lien.

 However, the term "exemption" in § 521(2)(A) is susceptible of being given a more colloquial and practical meaning. A lien is treated as a transfer of an interest in property.[29] Accordingly, if the lien remains in place, the exemption is ineffective with respect to the lienholder's interest in the property, and in a practical sense a full exemption is not achieved.

Indeed, the Bankruptcy Code itself arguably speaks with a forked tongue on the issue. The lien avoidance provision contained in § 522(f) arguably contemplates

that a lien that is effective prevents property, to the extent of that lien, from being exempted. Subject to certain requirements, § 522(f)(1) permits avoidance of a lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled ...." This by itself suggests that no exemption can arise if there is such impairment. Moreover, § 522(f)(2)(A), in defining impairment, refers to "(iii) the amount of the exemption that the debtor could claim if there were no liens on the property."

The Bankruptcy Code, in other words, uses "exemption" as having two different meanings: (1) exemption from the estate and (2) exemption via lien avoidance from the reach of lienholders. Accordingly, the Bankruptcy Code views fully encumbered property as truly exemptible only so long as the property can be rid of the lien via lien avoidance. The property can also be exempted from the estate (the more limited sense of exemption) and then redeemed under § 722, but removing the property from the estate does not alone achieve a full and true exemption in the broader sense because the redemption option carries a price (paying the lienholder the value of its lien). The case law and treatises both use the word exemption in this practical sense in addressing the effect of liens.[30]

The two other retention alternatives mentioned in § 521(2)(A) deal with powers that generally alter the lienholder's non-

---

**29.** *See* § 101(37) ("'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation'"); § 101(54) ("'transfer' means every mode, direct or indirect, absolute or conditional, ... of ... parting with ... an interest in property, including retention of title as a security interest ...").

**30.** In *Owen v. Owen*, 500 U.S. 305, 312–13, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Court stated that the proper approach under § 522(f) is to "ask first whether avoiding the

lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien ...." A leading treatise on bankruptcy views exemption of encumbered property as being limited to the equity, unless the lien is avoided. *See* 2 Epstein, et al., *Bankruptcy* (1992) § 8–2 at pp. 456–57; § 8–8 at p. 473 n. 3 (discussing exemptions that are subject to a value limitation); § 8–22 n. 12 (quoting *In re Simonson*, 758 F.2d 103, 106 (3d Cir. 1985)). However, that same treatise seems to view § 522(f) as meaning that encumbered property may be exempted (that is, removed

bankruptcy law rights. It can thus be argued that it is likely that the dual senses of exempting from the estate and from the reach of the lienholder is what Congress had in mind in using the term "claimed as exempt" in § 521(2)(A).

c.

*This Court's View of the Meaning of "claimed as exempt" in § 521(2)*

■ I conclude that avoiding a lien is not what Congress meant in using "claimed as exempt" in § 521(2)(A). First, lien avoidance is not something that is readily achieved in contrast to simply claiming the property as exempt; and in light of the command of § 521(2)(B) that the debtor perform her stated intention within 45 days after filing the notice of intention, it is more likely that Congress had in mind simply claiming the property as exempt from the estate, not as meaning depriving the lienholder of its lien (which is effected by lien avoidance, not by claiming the property as exempt).

Moreover, lien avoidance is entirely distinct from exempting property. When a lien is avoided, it generally is preserved for the benefit of the estate, and continues to encumber property exempted from the estate. *See* § 551; *In re Greater Southeast Community Hosp. Found., Inc.*, 237 B.R. 518 (Bankr.D.D.C.1999) (trustee could avoid lien on property that had been sold prepetition, and preserve the lien for the benefit of the estate). Sections 522(g) and 522(i), however, allow the debtor in certain circumstances to exempt the avoided lien and to preserve it for the benefit of the debtor, the focus being on the avoided

lien, not the property the lien encumbers. Exempting the lien is the necessary act that, pursuant to § 522(i)(2), preserves an avoided lien for the benefit of the debtor notwithstanding § 551. It is not the collateral itself that ends up being exempted after lien avoidance, but the preserved lien. Congress presumably would have listed "intends to avoid the lien on the property" as an option if that is what it had in mind in referring to "specifying that such property is claimed as exempt" in § 521(2)(A).

However, assuming that the phrase "specifying that such property is claimed as exempt" means specifying that the lien on such property will be avoided, this does not negate the court's interpretation of "surrender" set forth above. Indeed, treating the exemption option in that fashion makes it an option to alter the creditor's nonbankruptcy law rights (just as redemption and reaffirmation generally alter a lienholder's nonbankruptcy law rights). In contrast, "surrender" simply means not opting to retain in a fashion that alters the lienholder's nonbankruptcy law rights, and instead opting to submit the property to the processes of trustee administration pursuant to the debtor's surrender obligation under § 521(4).[31]

IX

IF "SURRENDER" ENTAILS TURN-OVER, THEN EXEMPTION, RE-DEMPTION, AND REAFFIRMA-TION ARE NOT EXCLUSIVE MEANS OF RETENTION

■ The court now turns to the second way of interpreting § 521(2) so as to avoid

---

from the estate by way of a claim of exemption), but with the exemption impaired by the lien, and notes that § 522(f) is not itself an exemption provision but a provision allowing avoidance of a lien on property that is allowed as exempt. *See Bankruptcy,* § 8–25 at 537; § 8–26 at p. 550.

31. *See Lair,* 235 B.R. at 74 ("[T]he surrender choice is only the choice not to retain through the use of bankruptcy alternatives but to submit to the general requirement that property of the estate be surrendered to the trustee.").

altering nonbankruptcy law and departing from prior law. Even if "surrender" in § 521(2) means turning over physical possession of the collateral to the lienholder, the statute ought not preclude a debtor from filing a statement of intention that states that the debtor intends to retain the vehicle without indicating that the debtor intends to exempt, redeem, or reaffirm.

### A.

Most decisions ruling that § 521(2) lists the only available retention options for a debtor reason that the statute is plain and unambiguous. Some decisions ruling that § 521(2) does not list exclusive options also view the statute as plain and unambiguous.

Frankly, the language "if applicable" in § 521(2) is bafflingly ambiguous. When someone is asked to "state his intention with respect to fasting or dining and, if applicable, specifying that he desires kosher or vegetarian food," that does not mean that kosher and vegetarian are the only two ways of having dinner. So, using that commonly understood meaning of the phrase "if applicable," a debtor's opting to retain is not limited to the listed possibilities of exemption, redemption, and reaffirmation when the statute commands the debtor to state "his intention with respect to the retention or surrender of [the] property and, if applicable, specifying that [the debtor intends to exempt, redeem, or reaffirm]." The debtor obviously retains a further option of retaining the collateral. For example, the lienholder may have no right of lien enforcement under nonbankruptcy law, or no right of obtaining possession incident to such enforcement. Moreover, even if the lienholder has a right to

obtain possession pursuant to lien enforcement, the debtor may elect to retain the collateral and hope that the lienholder will not employ its nonbankruptcy law remedies to obtain possession of the collateral.

The words "if applicable" refer not to retention, but to exemption, redemption, or reaffirmation, and it is thus a strained and unnatural reading to interpret "if applicable" as meaning "if retention is the course being pursued." If that was Congress's intention, it could readily have used those words. It did not do so, and the language "if applicable" is insufficient to demonstrate that Congress meant to exclude the unstated alternative of retaining the collateral subject to the lienholder's rights under nonbankruptcy law. Congress could have excluded that alternative, but did not do so, and Congress gave no indication that it was its intention to alter nonbankruptcy law rights, or to alter prior law, as discussed previously, regarding abandonment. For these reasons, the ambiguity should be resolved by holding that § 521(2) does not embody exclusive options.

### B.

The "exclusive option" courts reason that their interpretation is required by the structure of § 521(2). First, they reason that a stated intention to retain and maintain payments option could not be performed within the time specified by § 521(2)(B) (whereas exemption, redemption, or reaffirmation, at least theoretically, could be).[32] However, if the debtor states an intention to retain the property without exempting, redeeming, or reaffirming, she

---

**32.** I say "theoretically" because exempting property from the reach of a secured lienholder or reaffirming a debt may require procedural steps that cannot be accomplished within 45 days as they may entail the court entering an order. Reaffirmation of a debt

may require court approval. *See* 11 U.S.C. § 524(c)(6) and (d)(2). Exempting property from the reach of a secured creditor may require a motion to avoid the lien as impairing the debtor's ability to exempt the property. *See* 11 U.S.C. § 522(f).

states an intention to subject herself to whatever lien enforcement rights the lienholder has under nonbankruptcy law. When she makes such a statement, and continues to retain the collateral, she literally has complied with her stated intention under § 521(2)(A) of retaining possession.[33] In turn, the lienholder is on notice that the debtor has elected to retain without exempting, redeeming, or reaffirming, and can take steps to obtain relief from the automatic stay to enforce its lien rights under nonbankruptcy law.

Second, the "exclusive options" courts reason that "it would be the rare debtor indeed who would elect reaffirmation or redemption over the unstated fourth option, which neither requires a large lump sum payment (redemption) nor resuscitates personal liability for the underlying debt post-discharge (reaffirmation)." *Burr*, 160 F.3d at 847 (citation omitted). From this they conclude that it is odd that Congress would have left unspecified an unstated option that "would be almost universally employed." *Id.*

However, there is no empirical evidence to support that view. It would be a correct view only if one makes the mistaken assumption that permitting a statement of a naked intention to retain somehow immunizes the collateral from lien enforcement under nonbankruptcy law, when Congress gave no indication, one way or the other, that it intended to modify lien enforcement rights under nonbankruptcy law. Just as Congress gave no indication that it intended to take away from debtors the right, which occasionally exists under nonbankruptcy law, of retaining possession of the collateral and maintaining payments with lien enforcement unavailable, it also gave no indication that it intended to con-

fer such a right when none exists under nonbankruptcy law. Accordingly, the speculation in *Burr* may be empirically wrong: many debtors would elect to reaffirm or redeem because a naked retention without reaffirmation or redemption would expose them to enforcement of the lienholder's lien under nonbankruptcy law. Or they might elect not to reaffirm or redeem and to elect surrender, assuming it means turnover to the lienholder, because they are satisfied to use the full 45 days under § 521(2)(B) to arrange a turnover (with any equity in the collateral not being subjected to the costs of obtaining relief from the automatic stay, and the employment of personnel to seize and transport the collateral).

Similarly, the "exclusive options" courts emphasize that § 521(2)(C) only protects rights in the property under the Bankruptcy Code, and does not preclude altering nonbankruptcy law rights. However, that does not demonstrate that § 521(2)(A) was intended to alter nonbankruptcy law rights, and Congress presumably would have made clear any intent to alter nonbankruptcy law. Moreover, as discussed earlier, a turnover obligation does alter rights in the property under the Bankruptcy Code. So the structure of § 521(2) by itself does not demonstrate how this ambiguous provision is to be interpreted.

## C.

The "exclusive options" courts then proceed to find the answer to the statute's meaning through examining the overall structure of the Bankruptcy Code and giving weight to policies embodied therein that they often believe support their interpretation and giving lesser weight to policies that favor a contrary interpretation. However, the one policy they have uni-

---

**33.** Even if the debtor's option is viewed as "retain and maintain payments," most lien debts have a monthly payment due, so the debtor could indeed carry out her specified intention within the 45 days. *See Castillo,* 209 B.R. at 74.

formly overlooked is this: Congress traditionally has made itself very clear when it wishes bankruptcy legislation to alter nonbankruptcy rights.

The "exclusive options" courts reason that allowing a debtor to retain the collateral and maintain payments is inconsistent with the Code because it amounts to a form of installment redemption, something that § 722 clearly does not authorize. However, nothing in § 521(2) purports to authorize a debtor to prevent the lienholder from enforcing its lien under nonbankruptcy law when Bankruptcy Code provisions have not been employed to alter the lienholder's right of enforcement. So interpreting § 521(2) as authorizing the debtor to state an intention to retain without exempting, redeeming, or reaffirming does not create a form of redemption by installment.

The "exclusive option" courts also point to the reorganization chapters of the Bankruptcy Code, and reason that Congress knows how to authorize a "cram down" pursuant to which the debtor retains the collateral and maintains payments, and would have addressed "cram down" as an option in § 521(2) if it really had such an option in mind. However, § 521(2) governs giving notice of intention, and does not purport to confer powers on the debtor by reason of giving notice of intention. A notice of an intention to retain without exempting, redeeming, or reaffirming does not create a "cram down" power. "Cram down" alters creditors rights under nonbankruptcy law, and the point that must be emphasized is that Congress gave no indication that § 521(2) was intended to

alter such rights. A notice of intention to retain without exemption, redemption, or reaffirmation is simply notice that the debtor has elected to subject herself to the consequences under nonbankruptcy law of such naked retention, and advises the lienholder of that election, so that the lienholder can decide whether to seek relief from the automatic stay to enforce the lien.

If Congress truly wished to do away with any right of the debtor under nonbankruptcy law to retain possession of the collateral and to remain current on payments, that type of policy judgment simply cannot be inferred from the structure of the Bankruptcy Code itself.

### D.

 Because the statute (including related statutory provisions) do not give rise to a plain and unambiguous meaning for § 521(2), it is appropriate to examine the legislative history to § 521(2), and I agree with those courts which, as previously discussed, view the legislative history as justifying treating § 521(2) as simply a notice statute.[34]

### X

Regardless of which of the two alternative approaches I have adopted applies, I conclude that Kasper has complied with the spirit of the statute. Section § 521(2) does not alter the rights of a debtor and a lienholder regarding enforceability of the lienholder's lien under nonbankruptcy law. Accordingly, this leaves it open to a debtor to defeat enforcement of the lien when nonbankruptcy law bars such enforcement. Kasper's stated intention to retain may be viewed as stating an intention to surrender

---

34. *The legislative history is set forth at length in* Castillo, *209 B.R. at 68–71. I agree with* Castillo, *209 B.R. at 75, that:*

Congress' intent ... can be gleaned from the legislative history suggesting not that Congress sought to tie debtors' hands, but rather that, at the urging of the consumer creditors' lobby, they sought to provide a channel of communication between debtors and creditors—a channel that might enable debtors and creditors to work together, to avoid unnecessary litigation, and ultimately, to get creditors paid.

the collateral to the trustee's administration and eventually to whatever nonbankruptcy law lien enforcement rights that Ford may have, particularly when he has made that intention clear in his opposition to Ford's motion. Accordingly, even if the statute does not allow stating an intention to retain without checking exemption, redemption, or reaffirmation as applicable, Kasper has complied with the spirit of the statute.

The court will close this case as it is ready to close upon disposing of Ford's motion. Upon doing so, the automatic stay will be lifted. That will permit Ford to exercise its nonbankruptcy law remedies and effect a surrender of the property to pursuit of those remedies. There is no reason to compel Kasper to do the useless act of stating an intention to surrender when the closing of the case will effect a surrender to the lienholder's nonbankruptcy law remedies that Kasper is powerless to prevent. *See In re Silvestri*, 294 B.R. 421 (Bankr.D.R.I.2003).

An order follows denying Ford's motion.